Michael S. Devereux  (State Bar No. 225240)
**WEXFORD LAW**
9171 WILSHIRE BOULEVARD, SUITE 500
BEVERLY HILLS, CALIFORNIA  90210
TELEPHONE: (424) 444-0883

*Attorneys for Defendant,* SURGERY CENTER MANAGEMENT, LLC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            *Plaintiff,*<br><br>    *vs.*<br><br><br>SURGERY CENTER MANAGEMENT, LLC. *et al.*,<br><br>            Defendants. | Case No.: CR 17-661-DMG<br><br>**DEFENDANT SURGERY CENTER MANAGEMENT LLC.'S NOTICE OF MOTION AND MOTION FOR RETURN OF PROPERTY FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS; EXHIBITS**<br><br>Date:       September 1, 2021<br>Time:      2:30 p.m.<br><br>HON. DOLLY M. GEE |

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

    **PLEASE TAKE NOTICE** that, on September 1, 2021 at 2:30 P.M., or, as soon as this matter may be heard in Courtroom 8C, of this Court, located at 350 West 1st Street, 8th Floor, Los Angeles, California, 90012, Defendant Surgery Center Management ("SCM") by and through his counsel of record, will move and does hereby move this Court for an order to dismiss the Indictment, based on the Government's improper restraint of

funds and the denial of SCM's Sixth Amendment right to counsel of choice. SCM hereby requests an evidentiary hearing, pursuant to the Supreme Court's decisions in *United States v. Unimex, Inc.*, 991 F.2d 546, 550-51 (9th Cir. 1993) and *Luis v. United States,* 136 S. Ct. 1083, 1093-1095 (2016), to challenge the Government's seizure and continued restraint of assets necessary to fund SCM's defense in this criminal case.

In addition, SCM, will move and does hereby move this Court for an order requiring the Government to return funds for attorneys' fees, belonging to Defendant as an insured of Property Care Insurance, Inc., and seized by the Government.

This Motion is based on this Notice of Motion and Motion, the Fifth and Sixth Amendments to the United States Constitution, *United States v. Monsanto*, 491 U.S. 600 (1989), *United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993), *Luis v. United States,* 136 S. Ct. 1083, 1093-1095 (2016), the attached Memorandum of Points and Authorities in support of this Motion, all matters which the Court may judicially notice, the documents and pleadings previously filed with this Court, including those briefs and exhibits filed with the Court in connection with co-defendant Omidi's Motion to Dismiss (Dkt. 1038) and Motion for Reconsideration (Dkt. 1099), and upon such oral and documentary evidence that SCM may present at the hearing of this Motion.

## **MEET AND CONFER COMPLIANCE**

The parties met and conferred regarding the instant motion on August 2, 2021, but were unable to reach an agreement, thus necessitating the instant motion.

Dated: August 3, 2021                    WEXFORD LAW,


                                         *Michael S. Devereux*
                                         Michael S. Devereux
                                         Attorney for Defendant
                                         SURGERY CENTER MANAGEMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................... 1

II.    SCM MOVES FOR ATTORNEYS' FEES IN ORDER TO EXERCISE ITS
       SIXTH AMENDMENT RIGHTS TO COUNSEL AND FIFTH
       AMENDMENT DUE PROCESS.................................................. 4

III.   THE SEIZURE OF UNTAINTED ASSETS VIOLATED SCM'S SIXTH
       AMENDMENT RIGHT TO COUNSEL OF CHOICE. ........................... 8

IV.    SCM IS ENTITLED TO DISMISSAL AND/OR RETURN OF PROPERTY
       OR AN EVIDENTIARY HEARING CHALLENGING THE
       GOVERNMENT'S SEIZURE AND RESTRAINT OF ASSETS......................... 10

       A.    The Government Has Released $2.25 million of the Seized Funds,
             Refuting the Affidavit's Probable Cause Determination the Entirety of
             Seized Funds are Subject to Forfeiture ......................................... 10

       B.    The Government Unlawful Seizure of Untainted Assets That
             Otherwise Would Have Been Available for SCM's Defense Fees.............. 12

V.     NO REMEDY OTHER THAN DISMISSAL COULD ADEQUATELY
       CURE THE GOVERNMENT'S VIOLATION OF SCM'S SIXTH
       AMENDMENT RIGHTS. ...................................................... 13

VI.    CONCLUSION...................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Luis v. United States,*
    136 S. Ct. 1083 (2016)...................................................................................4, 5,7

*United States v. Bonventre,*
    720 F.3d 126 (2d Cir. 2013) ...........................................................................6

*United States v. Monsanto,*
    491 U.S. 600 (1989)..........................................................................................6

*US v. Unimex,*
    991 F.2d 546 (9th 1993)..............................................................................4,7,12

## I.      INTRODUCTION

Surgery Center Management, LLC ("SCM") is owned by Shawn Pezeshk (Mr. Pezeshk).  Mr. Pezeshk was born in 1950 and is a refugee of the Iranian Revolution. During the 1960s and into the 1970s, Mr. Pezeshk was educated in London as an civil engineer.  After completion of his studies, Mr. Pezeshk returned to Iran where he began a career as a civil engineer.

Soon thereafter, the Iranian Revolution took place under Ayatollah Khomeini.  It was a dangerous time for Mr. Pezeshk and his new family.  The Iranian Islamic Republic Army protected the internal "territory integrity" of the new Iranian state by persecuting those who did not share similar religious beliefs.   Mr. Pezeshk and his newly formed family[1] fled Iran, by initially moving to Turkey for two months before moving on to Switzerland.  After remaining in Switzerland for a short period, the family headed to Austria before migrating to the United States.

Once in the United States, Mr. Pezeshk could not find work.  So ,he started to work for his brother-in-law in construction.  His brother-in-law was Defendant Julian Omidi's father.  Accordingly, Mr. Pezeshk is Julian Omidi's uncle.

Mr. Pezeshk, worked with the construction firm for a few years until Mr. Pezeshk and his brother purchased a gas station on the corner of 190th Street and Crenshaw.  Mr. Pezeshk and his brother operated the gas station for 21 years.  After his brother's death in

---

[1] Mr. Pezeshk was married for 18 years before the marriage ended in 1998.  From 1998 to 2005, Mr. Pezeshk lived with his parents.

2010, Mr. Pezeshk sold the gas station.

In 2010, Mr. Pezeshk was provided an opportunity to become owner of SCM.  Mr. Pezeshk met with an attorney that assisted him through the process.  At some time, Mr. Pezeshk was informed that SCM would be indemnified by Property Care Insurance, which was owned by his sister, Cindy Omidi.

Mr. Pezesk, not familiar with the medical profession, had retained Julian Omidi (Mr. Omidi) as a contract consultant, thereby, designating Mr. Omidi to act on behalf as SCM's manager exclusively, knowing that Mr. Omidi was a medical school graduate and had experience in the medical field.

A.    Facts

SCM managed a series of medical facilities under the GET THIN[2] banner that provided treatment for medical issues, including bariatric surgery for weight-related conditions, sleep studies, and reconstructive surgery services. The Food and Drug Administration, along with the United States Attorney's Office for the Central District of California ("USAO"), conducted a multi-year investigation into alleged healthcare fraud purportedly committed by GET THIN entities.

In June 2014, the USAO secured seizure warrants through which it seized ten accounts at Deutsche Bank and two accounts at Bank of America partly belonging to SCM and which purportedly housed the proceeds of the illicit fraud schemes. The warrants

---

[2] GET THIN refers to the list of entities and individuals involved in the Government's multi-year investigation in addition to Julian Omidi, Michael Omidi, Cindy Omidi, and other individuals associated.

seized the full contents of these accounts – approximately $109,789,422,[3] primarily in cash and securities (CE0606,[4] Exh. 17; CE0609, Exh. 18)– under the theories that the funds either: (1) constituted illicit proceeds directly traceable to the alleged healthcare-related frauds; or (2) were involved in one or more money laundering transactions. A total of approximately $50 million were seized from PCI.[5]

SCM and its owner Shawn Pezeshk, have been victimized by the conduct of Charles Klasky, of which they knew nothing about.  SCM has been further victimized by essentially having no appreciable funds to defend itself in this complex case for the since it was unsealed in February 2018.  SCM has only been able to afford counsel for nine (9) hours a month which is insufficient to review the tens of millions of pages of discovery, interview witnesses, retain any experts or even obtain a discovery platform.

---

[3] On June 4, 2014, and July 2, 2014, the government executed two seizure warrants (14-1031M, 14-0127M) (the "Seizure Orders") for 14 accounts at DBS and BofA (account numbers: 5XL-066365; 5XL-066605; SXL-069112; A3V-943232; 5XL-878033; 5XL-878272; 5XL-069120; A3V-943240; 5XL-878025; 5XL-878264; 5XL-069104; 5XL-878579, 11548-63195 and 11548-63190), resulting in the Government taking custody and control of approximately $92,000,000.00 in funds and securities from accounts at DBS and an additional $17,297,000.00 from BofA. (CE0606, Exh. 17; CE0609, Exh. 18; CE0693, Exh. 21, at 1.)

The Seizure Orders were pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) and (b), based on alleged violations of 18 U.S.C. §§ 1341, 1343, 1347, 1956. (CE0606 Exh. 17, CE0609 Exh. 18; CE0693 Exh. 21, at 1.)

[4] "CE" refers to Compendium of Exhibits filed concurrently herewith.

[5] The five of the PCI accounts were 5XL-066365, 5XL-066605, 5XL-878579, 11548-63195 and 11548-63190. (CE0697, Exh. 22 (¶3); CE0709, Exh. 23 at 3:17-20; CE0772, Exh. 25; CE0775, Exh. 26; CE0780, Exh. 27) ("PCI's Bank Accounts"). Another $60 million, roughly, was held in trust accounts for the benefit of the Omidis.

3

1

2

## II.   SCM MOVES FOR ATTORNEYS' FEES IN ORDER TO EXERCISE ITS SIXTH AMENDMENT RIGHTS TO COUNSEL AND DUE PROCESS PURSUANT TO THE FIFTH AMENDMENT

3

4

5   SCM moves for release of its legitimate untainted funds to assert its Sixth

6   Amendment rights pursuant to matter.

7

### A.   US v. Unimex

8

9   In *US v. Unimex* 991 F.2d 546 (9th 1993), Unimex, a corporation, was no

10   represented at trial.  All of its assets were seized prior to trial.  Unimex sought return of

11   $100,000 of $2,000,000 seized to retain counsel.  The motion was denied without an

12   evidentiary hearing.  Without the funds Unimex could not defend itself.  CJA did not

13   provide for counsel since Unimex was a corporation.  Counsel could not ethically

14   represent Unimex on a contingent fee.  Unimex could not proceed pro per.  Although

15   Unimex may have been nothing more but a front for laundering money and its criminal

16

17   penalties entirely just, and, although, Unimex may have had other shareholders who have

18   put honest money into the case, thus innocent victim's of the manager's crimes, the court

19

20   reasoned that the practical effect of the combination of rules and laws prohibited Unimex

21   from effectively defending itself.  In addition, the court reasoned that the trial was unfair,

22   and the verdict was unreliable.  The court held that Unimex's right to counsel under the

23

24   Sixth Amendment and to Due Process  under the Fifth Amendment were violated by

25

26   taking away all of its assets by forcing it to trial without counsel.

27

### B.   Luis v. United States

28   In *Luis v. United States*, __ U.S. __, 136 S. Ct. 1083, 1090 (2016), the Court ruled

that it is improper for the government to restrain legitimate, untainted assets needed to retain a defendant's counsel of choice.

In *Luis v. United States*, the federal government charged Sila Luis with paying kickbacks, conspiring to commit fraud, and other health care related crimes. The federal government alleged that Luis had stolen approximately $45 million dollars through an array of health care scams, and had already spent the bulk of it.   Luis still had about $2 million in her possession, however, and the government, seeking to preserve those funds for restitution and criminal fines and penalties, obtained a pretrial order from the district court restraining Luis from dissipating these funds any fashion despite the government's stipulation that the funds were untainted.

Luis was not able to afford private counsel to represent her in the criminal matter. The Court held that pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment.  Allegations of government overzealousness have nearly overwhelmed what was once a safe consensus in favor of the notion that no person should enjoy the benefit of their ill-gotten gains.  The change is evident in the legal analysis of the Luis majority, and in the case's outcome.

The  Court reasoned that the Government's contingent interest in securing punishment of choice, namely criminal forfeiture, as well as the victim's interest in securing restitution, despite their importance, did not compare to the right of counsel.  The Court explained, for that reason the rights afforded by the Sixth Amendment, necessarily trumped the government's interests.

CASE NO. CR 17-00661(A)-DMG
**MOTION TO DISMISS BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE INTERFERENCE**

"The importance of the right at issue—to fund one's criminal defense with counsel of choice—counsels in favor of a minimal barrier to contest the restraint of needed monies." *United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013).  When assets are restrained, a *Monsanto* hearing provides a defendant with an avenue to challenge the pretrial restraint of assets as untainted funds as not being subject to forfeiture. *United States v. Monsanto*, 491 U.S. 600 (1989).

There is no question that SCM is unable to pay for counsel of his choice without release of the recognized untainted funds that have been restrained by the government. SCM currently is represented by a sole practitioner who has been unable to interview any witnesses, retain any experts, or completely review the Government's extensive discovery production due to the financial burden.

This Court is very well aware of the scope and complexities of this case and realizes the financial burden for effective representation. It is undersigned counsel's understanding that even the CJA who represented Mr. Omidi had budgeted approximately $1,500,000 to support this case through trial.  The costs for private representation are many times more especially given the expedited manner in which counsel must conduct the defense because trial is set shortly.

Based on the complex nature of this case with a trial expectancy of three-months, Counsel will need support to try the matter, including, but not limited to significant staff, including a team of attorneys, paralegals, forensic specialists, experts and investigators to assist the case at trial. Numerous motions in limine have yet to be filed, and it will take

considerable time and expense to prepare for trial. Mr. Devereux estimates that it will cost at a minimum $4 million to take this case to trial, which is significantly a lesser amount than released to co-defendant Mr. Omidi.

SCM presently lacks the funds to pay anything near the cost of mounting a robust defense.  Because of its inability to pay for a defense commensurate with the enormity and complexity of the allegations in the indictment, SCM is compelled to ask the Court to release some of the funds that were seized in 2014 and made the subject of the forfeiture complaint filed in CV 18-3855-DMG.

Here, in addition to moving for return of property under *Luis*, SCM "move[s] for the return of its property, as 'a person aggrieved' by the seizure of its property, in 'the district court for the district in which the property was seized,' " pursuant to *United States v. Unimex, Inc.*, 991 F.2d 546, 550-51 (9th Cir. 1993).

SCM, therefore, alleges it does not have funds to pay for counsel to represent it in this criminal matter; it has legitimate ownership interest in the funds seized from Property Care Insurance;[6] and the government cannot show that funds in the PCI accounts are traceable or otherwise sufficiently related to an alleged crime. Specifically, SCM has filed affidavits which, if true, tend to show that the entire approximately $109,789,422 seized was not forfeitable.

---

[6] In order to challenge forfeiture, a claimant need only allege that he has an ownership or other interest in the forfeited property. *United States v. $191,910.00 in United States Currency*, 16 F.3d 1051, 1057 (9th Cir. 1994). "This interest need not be an ownership interest; it can be any type of interest, including a possessory interest." *Id*. "[W]here a claimant asserts a possessory interest and provides some explanation of it [], he will have standing." *Id*. At 1058 (original emphasis). As such, SCM has standing in this matter to demand restitution of funds for attorneys' fees.

*First*, the entirety of the in excess of $109 million in seized funds is time-barred. *Second*, $32,000,000.00 traces to procedures other than lap-band surgery and sleep studies—which is the crux of the alleged criminal fraud, s*ee*, Complaint, No. CV 18-3855-DMG & Superseding Indictment, No. CR 17-661(A)-DMG —such as dermatology, plastic surgery, gynecology, general surgery, and podiatry, which were generated from 2008 to July 31, 2018.

## III.   THE SEIZURE OF UNTAINTED ASSETS VIOLATED SCM'S SIXTH AMENDMENT RIGHT TO COUNSEL OF CHOICE

The relevant law concerning the Sixth Amendment's right to counsel of choice and the facts associated with the Government's 2014 asset seizure are set forth in co-defendant Julian Omidi's Motion to Dismiss for Violations of the Sixth Amendment, which includes briefing and supporting exhibits filed at Dkts. 1038, 1061, 1068, 1084, 1117.  Rather than simply repeat that law and those facts here, SCM hereby incorporates the aforementioned briefing into this Motion.

Although SCM recognizes that the Court found that Omidi did not have a viable Sixth Amendment claim, *see* Dkt. 1084 at 8, SCM is in a different position.  First, SCM has filed a claim in the associated Civil Forfeiture Action and has shown a definitive need for funds to defend itself in this case.  Second, SCM paid millions of dollars in insurance premiums to PCI, and as an insured of PCI, has a direct pecuniary interest in funds seized by the Government from PCI.  *See* Declaration of Cindy Omidi; Exhibits.

In regard to Omidi, the Court found that he "has no Sixth Amendment right to use another person or entity's funds for his defense." July 28, 21 Order, Dkt. 1145 at 3.

However, SCM paid millions of dollars in insurance premiums to PCI and is has a direct interest in receiving insurance benefits that are due to it to defend this case.

At a minimum, SCM is entitled to the return of its premiums it provided PCI as the Government's seizure of the entirety of PCI's funds has made PCI defunct as an insurance company. SCM's Sixth Amendment right to counsel of choice trumps any novel Government's procedural claim to the contrary. Accordingly, SCM's claims must be addressed under *Luis* where the Government has the burden of proof, and not under Rule 12(b)(6).

No longer operating like it once did, SCM's income is limited, if any, thus has no funds to pay for its representation in this matter. SCM's prior counsel received at most $5,000 per month for its services. *See* Declaration of Cindy Omidi. In addition, SCM's current, counsel receives only $7,000 a month for its representation. This amounts to approximately 9 hours of work per month by counsel on this case, which is obviously woefully inadequate to defend a case of this magnitude.

Mr. Omidi's counsel has submitted extensive documentation that in excess of $18 million is necessary to defend his portion of the case alone. The Government has released $10 million to Mr. Omidi so far for his defense but has refused to release *any* funds to SCM. Funds must also be released to SCM so that it can exercise its Sixth Amendment right to counsel and Due Process pursuant to the Fifth Amendment. The Government cannot play favorites with the Defendants, and at a minimum, $10 million should be released to SCM so that SCM can property defend itself, and to even the playing field

CASE NO. CR 17-00661(A)-DMG
**MOTION TO DISMISS BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE INTERFERENCE**

between Defendants.  *See* Declaration of Michael Devereux substantiating funds needed for defense of this case.

## IV. SCM IS ENTITLED TO DISMISSAL AND/OR RETURN OF PROPERTY OR AN EVIDENTIARY HEARING CHALLENGING THE GOVERNMENT'S SEIZURE AND RESTRAINT OF ASSETS.

### A. The Government Has Released $2.25 million of the Seized Funds, Refuting the Affidavit's Probable Cause Determination the Entirety of Seized Funds are Subject to Forfeiture

In 2015, the Government released $2.25 million of seized funds from Property Care Insurance, Inc. and directed it only to be used for the review of privilege of the extraordinary broad seizure on June 4, 2014.  SCM has filed a claim in the associated civil forfeiture case with respect to the funds held by PCI.  Five of the accounts 5XL-066365, 5XL-066605, 5XL-878579, 11548-63195 and 11548-63190, containing a total of approximately $50 million, were held by PCI.  ("PCI's Bank Accounts").

And, in October 2020, the Government released an additional $10 million from the Trusts to Mr. Omidi.

Accordingly, the Affidavit's probable cause determination that the entirety of the seized funds is subject to forfeiture is apparently *inaccurate and misleading*.  Indeed, the Government would have had no authority to release any funds for which there was probable cause of illegality, even by stipulation.  *United States Postal Serv. v. Ester*, 836 F.3d 1189, 1197–98 (9th Cir. 2016) (The federal government cannot enter into valid and binding contracts except through the actions of a government representative having actual authority to bind the United States in contract.) (citation and internal quotations omitted).

The Government improperly directed the use of the seized funds both with the

release of $2.25 million from PCI in 2015, and in the stipulation with Omidi in which the Government directed and placed limitations on the use of funds.  Though the record is clear, and the Government has itself acknowledged SCM's counsel have repeatedly asserted lack of funds and requested the Government to return funds for attorneys' fees, the Government refused and directed the $2.25 million dollars only to be used for privilege review of the Government's improper seizure of privileged communications.

The Court should be troubled by the unlawful seizure of untainted funds, with the Government thereafter directing the use of the funds that never should have been seized. Such conduct is outrageous, a violation of Due Process, and Sixth Amendment rights of the Defendants.

Though the Court has stated that funds were released in a "stipulation", Defendants have no meaningful choice than to take the funds with limitations than risk receiving no funds at all.  The Government simply cannot be permitted to improperly seize tens of millions in untainted funds with false affidavits of probable cause leaving Defendants destitute.  Then once confronted with its unlawful acts, the government releases whatever funds it chooses and direct the use of the untainted funds, that should have never seized in the first place.

**B.    The Government's Unlawful Seizure of Untainted Assets That Otherwise Would Have Been Available for SCM's Defense Fees.**

As described in co-defendant Omidi's motion to dismiss, the Government seized tens of millions of dollars that even the Government agrees were not the product of any

fraud, but were seized only on the basis of the Government's questionable comingling allegations. *See* Dkt. 1038 at 3-5. SCM hereby incorporates here each of the arguments made by Omidi concerning the Government's dubious at best use of the "commingling" theory, as applied to the facts of this case.

The Ninth Circuit, in *United States v. Unimex, Inc.*, plainly held that when the Government obtains a seizure warrant on the basis of an *ex parte* Government affidavit, as was the case here, a criminal defendant is entitled to challenge the lawfulness of the resulting seizure via an adversarial, evidentiary hearing, so long as the defendant presents a "nonconjectural" claim that innocent assets were seized. *See* 991 F.2d 546, 550-51 (9th Cir. 1993); *see also In Re Seizure of: Any & all funds held in Republic Bank of Arizona Accts.*, No. 218-cv-06742RGKPJW, 2019 WL 8892585, at *8 (C.D. Cal. Dec. 20, 2019).

Although the Court found that Omidi did not have a right to a hearing because Omidi had not demonstrated that he lacked access to funds to pay for his defense, given the $10 million released by the Court to Omidi's counsel in the fall of 2020, SCM is differently situated as discussed above. SCM is entitled to a hearing because it does not have funds available to it to otherwise fund its defense at the upcoming September 2021 trial. $7,000 a month is insufficient to pay for undersigned counsel's representation for even one day of trial, to retain any experts or permit interview of witnesses for a matter that is expected to last three-months.

## V.   NO REMEDY OTHER THAN DISMISSAL COULD ADEQUATELY CURE THE GOVERNMENT'S VIOLATION OF SCM'S SIXTH AMENDMENT RIGHTS.

The unlawful seizure of untainted assets violated SCM's Sixth Amendment rights,

as well as its Fifth Amendment Due Process to mount a defense without Governmental interference. The Government held on to the untainted assets for years, thus ensuring that SCM was left without adequate funds to hire its counsel of choice.  For example, SCM's prior attorney, George Paukert, is a bankruptcy attorney, having no experience in federal criminal litigation.  Current counsel is constrained by the extreme lack of funds for a three-month trial.

In addition, the Government's ability to lawfully restrain the seized assets expired with the running of the applicable statute of limitations—which occurred no later than 2017—and thus, from that moment forward, the Government was acting unlawfully by continuing when it continued to restrain assets that SCM needed in order to fund its defense.

As a result of the Government's overzealousness, SCM was denied the opportunity to fully prepare itself for trial.  SCM was prevented from conducting the necessary pre-Indictment investigation and defense, and even post-Indictment, was forced, at first, to proceed with underfunded counsel, who was a federal attorney, but with a bankruptcy background. And later SCM after SCM found a federal criminal defense attorney, SCM was financially strapped and could not afford the experts, the investigators and the consultants a matter like this requires.  Compare the government's team to SCM's team: the government has several attorneys; numerous  investigators; and numerous experts, et al.  SCM's defense team is a solo practitioner with more than 15 years in federal court, and although he has a good track record, his resources are limited.  Moreover, because

SCM is a corporation, there are no CJA funds available for its defense.

The unlawful seizure and retention of innocent assets had denied SCM its Sixth Amendment rights, for more than six (6) years, including three years post-Indictment.[7] The opportunities that were missed by virtue of not having counsel of counsel are numerous: relevant fact witnesses were not contacted and interviewed by SCM when the witnesses memories were fresh; evidence deleted by the government's CI, Klaskey, was lost; a significant background checks on all witnesses and potential witnesses were foregone; and the voluminous discovery was left fundamentally unreviewed for years because of lack of funds, thus affecting subpoenaing of documents, along with the potential to drill down into the files/documents for exculpatory evidence.

///

///

///

//

///

///

---

[7] The consequence of this protracted denial of SCM's Sixth Amendment rights, as the Supreme Court has recognized, necessarily an "unquantifiable" and "indeterminate" structural error, such that this Court does not "even ask whether the error harmed the defendant." *United States v. Gonzalez- Lopez*, 548 U.S. 140, 147-48 (2006).  Dismissal of the Indictment against SCM is required because it is impossible to remove the taint of the years-long constitutional violation and restore SCM to the position it would have been, absent the Government's wrongdoing. *Johnson v. Uribe*, 700 F.3d 413, 425 (9th Cir. 2012).

## VI.    CONCLUSION

For the foregoing reasons discussed herein, SCM respectfully requests that the Court: 1) dismiss the case against SCM in its entirety; or 2)) for the improper restraint of funds and violation of its Fifth and Sixth Amendment rights to counsel of choice.  In the alternative SCM requests $10 million in funds released to it to conduct its defense. If the above two remedies are denied, SCM requests the Court to hold an evidentiary hearing regarding the legality of the Government's asset seizure or dismiss the Indictment against SCM on the basis that the Government's asset seizure violated SCM's Sixth Amendment right to counsel of choice.

Dated:  August 3, 2021                        Respectfully submitted,

                                              WEXFORD LAW,


                                    _  *Michael Devereux*

                                        Michael S. Devereux
                                        Attorney for Defendant
                                   SURGERY CENTER MANAGEMENT

## DECLARATION OF MICHAEL DEVEREUX

1.     I am the attorney of record on this matter. I am duly admitted to practice before, and before the United States District Courts, the Central District of California, the Eastern District of California, the Southern District of California, the Northern District of California, along with the Ninth Circuit Court of Appeals, and in all courts in the State of California. I have personal knowledge of the facts in this declaration.  If called upon as a witness I could and would competently testify to the contents hereof.

2.     I am the attorney of record representing Surgery Center Management, LLC (SCM), in this matter.

3.     I am informed and believe that Property Care Insurance, Inc, was formed to indemnify SCM and others in their defense. See Declaration of Cindy Omidi and exhibits.

4.     Accordingly, SCM has a legitimate interest in the untainted funds seized from Property Care Inc.

5.     I currently receive a small monthly stipend that covers only 9 hours of work per month.  Such fee isn't reasonable to defend SCM in a three-month trial.

6.     Having close to twenty-years experience in the Central District of California, including numerous trials I believe that my costs for a defense team at trial will be a minimum of $4 million.

7.     I have met the owner of Surgery Center Management, LLC (SCM), Sean Pezeshk (Mr. Pezeshk), on many occasions.

8.     My impression is that Mr. Pezeshk is on a fix income.

9.     Mr. Pezeshk also believes that Property Care Insurance (PCI) is liable for SCM's legal costs.

10.    I am informed by Mr. Pezeshk that he has no desire to pay for SCM's legal costs.

11.    I am informed and believe that SCM is not operating as it once was and thus any income, if any, is limited.

I declare the foregoing to be true and correct under the penalty of perjury. EXECUTED on

August 3, 2021, at Beverly Hills, California.

*Michael Devereux*

Michael Devereux