TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
CATHY J. OSTILLER (Cal. Bar No. 174582)
Senior Litigation Counsel
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorneys
Major Frauds Section
      1100/1400 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0526/6159/2435/1786
      Facsimile: (213) 894-6269
      E-mail:    Kristen.Williams@usdoj.gov
                 Cathy.Ostiller@usdoj.gov
                 Alex.Wyman@usdoj.gov
                 Ali.Moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 17-00661(A)-DMG |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT SURGERY CENTER MANAGEMENT'S MOTION TO DISMISS BECAUSE OF LOSS AND/OR DESTRUCTION OF EVIDENCE (*TROMBETTA/YOUNGBLOOD*); DECLARATION OF KRISTEN A. WILLIAMS |
| v. | |
| JULIAN OMIDI,<br>  aka "Combiz Omidi,"<br>  aka "Combiz Julian Omidi,"<br>  aka "Kambiz Omidi,"<br>  aka "Kambiz Beniamia Omidi,"<br>  aka "Ben Omidi,"<br>SURGERY CENTER MANAGEMENT, LLC,<br>and<br>MIRALI ZARRABI, M.D.,<br>  aka "Mirali Akba Ghandchi<br>      Zarrabi,"<br>  aka "M.A. Ghandchi Zarrabi," | Hearing Date: September 1, 2021<br>Hearing Time: 4:30PM<br>Location:     Courtroom of the<br>              Hon. Dolly M. Gee |
| Defendants. | |

1    Plaintiff United States of America, by and through its counsel

2 of record, the Acting United States Attorney for the Central District

3 of California and Assistant United States Attorney Kristen A.

4 Williams, Cathy J. Ostiller, Alexander C.K. Wyman, and Ali Moghaddas,

5 hereby files its Opposition to defendant Surgery Center Management,

6 LLC's Motion to Dismiss Because of Loss and/or Destruction of

7 Evidence (Trombetta/Youngblood).  (Dkt. 1166.)

8    This Opposition is based upon the attached memorandum of points

9 and authorities, the attached declaration of Assistant United States

10 Attorney Kristen A. Williams, the files and records in this case, and

11 such further evidence and argument as the Court may permit.

12 Dated: August 17, 2021          Respectfully submitted,

13                                 TRACY L. WILKISON
                                   Acting United States Attorney
14
                                   SCOTT M. GARRINGER
15                                 Assistant United States Attorney
                                   Chief, Criminal Division
16
17                                 _____
                                   KRISTEN A. WILLIAMS
18                                 CATHY J. OSTILLER
                                   ALEXANDER C.K. WYMAN
19                                 ALI MOGHADDAS
                                   Assistant United States Attorneys
20
                                   Attorneys for Plaintiff
21                                 UNITED STATES OF AMERICA

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      On June 17, 2016, Charles Klasky ended his employment with GET

4  THIN and deleted some of his files from his work computer as he left.

5  Defendant SURGERY CENTER MANAGEMENT, LLC ("SCM") now makes vague and

6  conclusory claims that this amounted to the government's bad faith

7  destruction of evidence that could have exonerated it.  (Dkt. 1166

8  ("Motion").)  However, its Motion fails to demonstrate that any of

9  those things are true, much less warrant the extraordinary remedies

10  it requests.  The Internet browsing files and handful of background

11  documents about sleep study questionnaires that can be readily found

12  on the Internet do not appear to have any evidentiary significance to

13  this case, much less be exculpatory.  There is no evidence the

14  government even knew of Klasky's actions beforehand, much less

15  directed them.  The Motion should be denied.

16

**II.   STATEMENT OF FACTS**

17      As the Court is aware from prior briefing (<u>see, e.g.,</u> Dkt. 797,

18  886), Klasky began working with GET THIN as the manager of its sleep

19  study program, run through Independent Medical Services, Inc., in or

20  around May 2010.  After a brief departure in late 2015, Klasky

21  returned in mid-January 2016 for significantly less compensation and

22  working largely on insurance collection on behalf of another GET THIN

23  entity, Salus Medical Services, Inc.  Following the March 2016 search

24  of Klasky's residence, Klasky agreed to cooperate with the government

25  in the conduct of recordings of his conversations with defendant

26  JULIAN OMIDI ("OMIDI") during his continued work with GET THIN.  (<u>See</u>

27  Order re Defendant Julian Omidi's Motion Requesting Judicial Findings

28

1  on Joint Defense Privilege Issues ("Order") at 4, Dkt. 943.)  The

2  last of those recordings occurred on June 9, 2016.  (Order at 5.)

3      Klasky left GET THIN on June 17, 2016.  (Dkt. 1166-1 ("Rajabi

4  Decl.") ¶ 5.)  On that last day, Klasky has stated that he deleted

5  approximately 800 of his files, primarily related to his extensive

6  job search efforts, from his work computer.  (Id. ¶ 10.)  SCM's IT

7  consultant, Ashkan Rajabi, apparently learned of these deletions

8  three days later.  (Id. ¶¶ 6-7.)  As reflected in the discovery in

9  this case, the government asked Klasky about these deletions (and

10  received the above response) only after counsel for OMIDI and others

11  raised them during a July 5, 2016 meeting with the government.[1]

12  (Declaration of Kristen A. Williams ("Williams Decl.") ¶ 2.)

13      On August 2, 2021, during a telephone conference regarding SCM's

14  anticipated motion, the government requested information about the

15  files SCM claimed Klasky had deleted and asked for access to the

16  electronic information regarding that alleged deletion so that it

17  could assess SCM's claims.  (Id. ¶ 4.)  Counsel for SCM responded

18  that he had not yet seen the evidence, but had just been informed

19  about it by disbarred attorney Brian Oxman the day before.  (Id.)  To

20  date, SCM has not provided the government with any of the original

21  electronic information regarding the alleged deletions.  (Id.)

22      SCM filed the instant motion with a three-page declaration dated

23  April 13, 2018, from Rajabi.  That declaration, which is not

24  

25      [1] In March 2018, OMIDI's counsel included a purported screenshot
of Klasky's computer from June 17, 2016 in correspondence.  (Dkt.
26  185, Ex. K.)  The government noted that there was no authentication
of the screenshot, evidence of whose computer it was, or proof of any
27  material (much less volume or substance) deleted on any date, and
requested information underlying the claims.  (Dkt. 185, Ex. L.)  The
28  government never received any materials responsive to its requests.
(Williams Decl. ¶ 3.)

1  supported by any exhibits, claims that, on June 17, 2016, Klasky

2  deleted unidentified files from his desktop, download folder,

3  document folder and other folders, as well as various unidentified

4  Internet-related records, including bookmarks, favorite websites,

5  cookies, and browsing history.  (Rajabi Decl. ¶ 7.)  Although the

6  declaration asserts that Klasky "deleted essentially all of the files

7  which [sic] related to sleep studies and correspondence and papers

8  related to his work and the sleep studies" (id.), the only "sleep

9  study related files" specifically identified as deleted are:

10       Insomnia Severity Index, PSQI_Instrument, PSQI_Scoring,
         PSQI Scoring database, Functional Status Outcomes for
11       Sleep, TrajectoryCalculator, The Epworth Sleepiness Scale—
         Background, Measures of Sleep (Questionnaires), Insomnia
12       Severity Index-ISI, PSQI_How_to_Download_and_use, and
         psqi_sleep_questionaire_1_pg.

13

14  (Id. ¶ 11.)  The file names appear to relate to informational or

15  background documentation rather than documents specific to GET THIN

16  or its patients.  Additionally, several of the files listed appear to

17  bear similar names to files readily accessible through Internet

18  searches.  See, e.g., Sleep measures/Instruments, Center for Sleep

19  and Circadian Science, https://www.sleep.pitt.edu/instruments/ (last

20  visited Aug. 12, 2021) (providing links to documents related to the

21  Pittsburg Sleep Quality Index ("PSQI"), including PSQI-

22  Instrument.pdf, PSQI-Scoring.doc, PSQI-How-to-Download-and-use.pdf,

23  PSQI-Scoring-database.zip); ons.org,

24  https://www.ons.org/sites/default/files/InsomniaSeverityIndex_ISI.pdf

25  (last visited Aug. 12, 2021).

26       Over the course of the government's investigation of the GET

27  THIN enterprise, the government obtained numerous business, medical,

28  and financial records relating to GET THIN's business practices and

3

insurance claims, including its sleep study program and sleep study reports.  (Williams Decl. ¶ 5.)  Most of these records were obtained before (often years before) June 2016.  (Id.)  Those records have included hundreds, if not thousands, of sleep study reports and the protocols and procedures of GET THIN's sleep study program produced by SCM itself; thousands of sleep study reports, GET THIN's electronic medical records database, and numerous documents and emails regarding the conduct of GET THIN's sleep study program obtained from GET THIN's business locations pursuant to searches in June 2014; and thousands of sleep study reports and patient records obtained from witnesses and the March 2016 search of Klasky's residence and email account.  (Id.)  To the extent these materials were received by the prosecution team and were discoverable, they have been produced in discovery in this case.  (Id.)  Searches for "PSQI," "Pittsburgh Sleep Quality Index," and "Insomnia Severity Index" within the government's discovery database reveal very few hits and none that appear to reflect that GET THIN administered these sleep questionnaires to its patients.  (Id.)

**III. ARGUMENT**

In order for the government to violate a defendant's right to due process with respect to unavailable evidence, (1) evidence must have possessed an exculpatory value apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means and (2) the government must have acted in bad faith in failing to preserve the evidence.  See California v. Trombetta, 467 U.S. 479, 489 (1984); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988).  SCM's motion makes conclusory statements, but offers no evidence on either point, even

4

1  though this was SCM's burden, and SCM was obliged, as the moving

2  party, to "set forth all facts then known upon which it is contended

3  the motion should be granted."[2]   L.Cr.R. 12-1.1.   See Trombetta, 467

4  U.S. at 489; United States v. Marshall, 109 F.3d 94, 97-98 (1st Cir.

5  1997).

6       The deleted materials at issue here, to the extent SCM specifies

7  them, appear to be either files related to Internet browsing or

8  background, informational documents related to various types of sleep

9  study questionnaires, including various questionnaires that GET

10  THIN's sleep study program does not appear to have ever used.

11  Although SCM describes the latter category as "sleep study records"

12  (Motion at 5), the fact that a document may be related to the conduct

13  of sleep studies generally does not mean that it is a medical record

14  relating to a sleep study conducted by GET THIN (which these do not

15  appear to be), reflects internal GET THIN policies and protocols

16  regarding its sleep study program, or is even a business record of

17  GET THIN.   SCM fails to demonstrate that the materials deleted have

18  any evidentiary value in this case, much less constitute evidence

19  with an exculpatory value that was readily apparent in June 2016,

20  after the charged scheme had ended and after voluminous records

21  regarding the conduct of GET THIN's sleep study program had already

22  been gathered, including from SCM and GET THIN directly years

23  earlier.   Nor does SCM offer any reason to think that these materials

24

25       [2] The Court should not permit SCM to supplement its facts in its
    reply, particularly given that it apparently has been aware of this
26  issue for more than five years and has repeatedly ignored the
    government's request for more information on this issue.  If it does
27  attempt to do so, the government intends to request that those facts
    be stricken or, alternatively, that SCM be ordered to disclose the
28  underlying original electronic evidence it has on this issue and that
    the government be given an opportunity to file a further response.

1   (should it actually want them) could not be reasonably obtained

2   through other means, either in the hundreds of thousands of documents

3   previously obtained from GET THIN or through a Google search.

4       Similarly, the Motion provides no evidence that the government

5   directed or authorized Klasky's conduct in deleting the items, or

6   that even was aware of it at the time.  Indeed, as reflected in the

7   discovery produced in this case, to the Prosecution Team's knowledge,

8   no such evidence exists, and the government only asked Klasky about

9   those deletions after they had been brought to its attention.

10   (Williams Decl. ¶ 2.)  See United States v. Estrada, 453 F.3d 1208,

11   1212-13 (9th Cir. 2006) (no due process violation where truck

12   containing pseudoephedrine pills had uncertain evidentiary value and

13   there was no showing the government knew or intended for truck to be

14   sold by towing company).

15       Nor can SCM demonstrate bad faith by pointing to Klasky's

16   contemporaneous cooperation with the government.  The fact that a

17   cooperator is assisting the government in some respects, does not

18   necessarily turn the cooperator into an agent of the government in

19   all respects or make all of the cooperator's actions attributable to

20   the government, particularly where, as here, the government did not

21   know of or direct or authorize the conduct.  Cf. United States v.

22   Holler, 411 F.3d 1061, 1065-66 (9th Cir. 2005) (no violation of due

23   process where informant's misconduct not attributable to government);

24   United States v. Prairie, 572 F.2d 1316, 1319 (9th Cir. 1978) (no due

25   process violation for outrageous government conduct when paid

26   informant had sex with suspect, but was neither paid nor asked by

27   agents to establish a relationship with the suspect).

28

**IV.   CONCLUSION**

Because SCM has failed to demonstrate that there is any due process violation here, much less one warranting the extraordinary remedies he seeks, the government respectfully requests that this Court deny the Motion.

1

<u>**DECLARATION OF KRISTEN A. WILLIAMS**</u>

2

I, Kristen A. Williams, state and declare as follows:

3

1.   I am an Assistant United States Attorney ("AUSA") for the

4

Central District of California and am one of the attorneys assigned

5

to the prosecution of <u>United States v. Julian Omidi, et al.</u>, CR No.

6

17-00661-DMG.   I make this declaration in support of the Government's

7

Opposition to defendant SURGERY CENTER MANAGEMENT, LLC's ("SCM")

8

Motion to Dismiss Because of Loss and/or Destruction of Evidence

9

(<u>Trombetta</u>/<u>Youngblood</u>).

10

2.   Based on my familiarity with the discovery produced in this

11

case and available to the Prosecution Team, I know that the

12

statements by Charles Klasky referenced in the declaration of Ashkan

13

Rajabi's submitted in support of SCM's motion at paragraph 10 are

14

from the government's October 2016 interview of Klasky, well after

15

counsel for OMIDI and others raised the issue of Klasky's June 17,

16

2016 deletions during a July 5, 2016 meeting with the government.

17

3.   The government never received any materials responsive to

18

its requests for information underlying the purported June 17, 2016

19

screenshot of Klasky's computer contained in counsel for defendant

20

JULIAN OMIDI's March 2018 correspondence.

21

4.   On August 2, 2021, during a telephone conference regarding

22

SCM's anticipated motion, I asked counsel for SCM, Michael Devereux,

23

for more information about the files SCM claimed Klasky had deleted

24

and asked for access to the electronic information regarding that

25

alleged deletion so that it could assess SCM's claims.   Mr. Devereux

26

responded that he had not yet seen the evidence, but had just been

27

informed about it by disbarred attorney Brian Oxman the day before.

28

To date, SCM has not provided the government with any of the original

electronic information regarding the alleged deletions referenced in
its motion.

     5.    Based on my familiarity with the government's investigation
and discovery in this case, I know that, over the course of the
investigation of the GET THIN enterprise, the government obtained
numerous business, medical, and financial records relating to GET
THIN's business practices and insurance claims, including its sleep
study program and sleep study reports.  Most of these records were
obtained before (often years before) June 2016.  Those records have
included hundreds, if not thousands, of sleep study reports and the
protocols and procedures of GET THIN's sleep study program produced
by SCM itself; thousands of sleep study reports, GET THIN's
electronic medical records database, and numerous documents and
emails regarding the conduct of GET THIN's sleep study program
obtained from GET THIN's business locations pursuant to searches in
June 2014; and thousands of sleep study reports and patient records
obtained from witnesses and the March 2016 search of Klasky's
residence and email account.  To the extent these materials were
received by the Prosecution Team and were discoverable, they have
been produced in discovery in this case.  Searches for "PSQI,"
"Pittsburgh Sleep Quality Index," and "Insomnia Severity Index"
within the government's discovery database reveal very few hits and
none that appear to reflect that GET THIN administered these sleep
questionnaires to its patients.

     I declare under penalty of perjury under the laws of the United
States of America that the foregoing is true and correct to the best

9

of my knowledge and belief and that this declaration was executed on
August 16, 2021, at Los Angeles, California.

KRISTEN A. WILLIAMS