TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
CATHY J. OSTILLER (Cal. Bar No. 174582)
Senior Litigation Counsel
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorneys
Major Frauds Section
  1100 United States Courthouse
  312 North Spring Street
  Los Angeles, California 90012
  Telephone: (213) 894-2400
  Facsimile: (213) 894-6269
  E-mail:  Kristen.Williams@usdoj.gov
       Cathy.Ostiller@usdoj.gov
       Alex.Wyman@usdoj.gov
       Ali.Moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>     v.<br><br>JULIAN OMIDI,<br> aka "Combiz Omidi,"<br> aka "Combiz Julian Omidi,"<br> aka "Kambiz Omidi,"<br> aka "Kambiz Beniamia Omidi,"<br> aka "Ben Omidi,"<br>SURGERY CENTER MANAGEMENT, LLC,<br>and<br>MIRALI ZARRABI, M.D.,<br> aka "Mirali Akba Ghandchi<br>   Zarrabi,"<br> aka "M.A. Ghandchi Zarrabi,"<br><br>   Defendants. | No. CR 17-661(A)-DMG<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT MIRALI ZARRABI'S MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATIONS<br><br>Hearing Date: September 1, 2021<br>Hearing Time: 4:30 p.m.<br>Trial Date: September 21, 2021<br>Trial Time: 8:30 a.m.<br>Place:   Courtroom of the<br>       Hon. Dolly M. Gee |

1    Plaintiff United States of America, by and through its counsel

2  of record, the Acting United States Attorney for the Central District

3  of California and Assistant United States Attorneys Kristen A.

4  Williams, Cathy J. Ostiller, Alexander C.K. Wyman, and Ali Moghaddas,

5  hereby files its Opposition to Defendant Mirali Zarrabi, M.D.'s

6  Motion to Dismiss for Speedy Trial Violations.

7    This Opposition is based upon the attached memorandum of points

8  and authorities, the files and records in this case, and such further

9  evidence and argument as the Court may permit.

10  Dated: August 17, 2021          Respectfully submitted,

11                                  TRACY L. WILKISON
                                    Acting United States Attorney
12
                                    SCOTT M. GARRINGER
13                                  Assistant United States Attorney
                                    Chief, Criminal Division
14

15                                  _____

16                                  KRISTEN A. WILLIAMS
                                    CATHY J. OSTILLER
17                                  ALEXANDER C.K. WYMAN
                                    ALI MOGHADDAS
18                                  Assistant United States Attorneys

19                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

20

21

22

23

24

25

26

27

28

2

**TABLE OF CONTENTS**

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................1

      A.    ZARRABI was Indicted on January 24, 2018 and the Court
            Set a Trial Date of May 1, 2018..........................1

      B.    ZARRABI Requested a Continuance from May 1, 2018 to
            October 9, 2018..........................................2

      C.    The Court Granted 90-Day Stay Followed by Two
            Extensions...............................................2

      D.    The Court Denied ZARRABI's First Motion for Severance.....3

      E.    ZARRABI's Co-Defendants Requested Continuances to
            December 3, 2019 and October 13, 2020....................3

      F.    The Court Denied ZARRABI's First Renewed Motion for
            Severance................................................4

      G.    The COVID-19 Pandemic and Judicial Measures Taken in
            Response.................................................5

      H.    Trial Continued to May 4, 2021 Due to COVID-19
            Pandemic.................................................7

      I.    The Court Denied ZARRABI's Second Renewed Motion for
            Severance................................................7

      J.    Trial Continued from May 4, 2021 to Current Date of
            September 21, 2021.......................................8

III.  LEGAL STANDARD.................................................9

IV.   ARGUMENT.....................................................10

      A.    There Has Been No Sixth Amendment Violation.............10

            1.    Length of delay...................................11

            2.    Reason for delay..................................11

            3.    Assertion of right to a speedy trial..............13

            4.    Prejudice.........................................14

      B.    ZARRABI's Rights Under the Speedy Trial Act Have
            Likewise Not Been Violated..............................16

V.    CONCLUSION...................................................18

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                **Page(s)**

3

Barker v. Wingo,
4    407 U.S. 514 (1971) ................................. 14, 18, 19, 20

5
Doggett v. United States,
     505 U.S. 647 (1992) .............................................. 14
6
In re Approval of Judicial Emergency in the Central Dist. of Cal.,
7    955 F.3d 1140 (9th Cir. 2020) ............................... passim

8
McNeely v. Blanas,
9    336 F.3d 822 (9th Cir. 2003) .................................... 17

10
United States v. Baker,
     63 F.3d 1478 (9th Cir. 1995) .................................... 15
11
United States v. Butz,
12   982 F.2d 1378 (9th Cir. 1993) ................................... 26

13
United States v. King,
     483 F.3d 969 (9th Cir. 2007) ............................... 17, 20
14
United States v. Koerber,
15   813 F.3d 1262 (10th Cir. 2016) .................................. 27

16
United States v. Loud Hawk,
17   474 U.S. 302 (1986) ............................................. 19

18
United States v. Messer,
     197 F.3d 330 (9th Cir. 1999) ............................... passim
19
United States v. Nance,
20   666 F.2d 353 (9th Cir. 1982) .................................... 15

21
United States v. Olsen,
     995 F.3d 683 (9th Cir. 2021) ............................... passim
22

23
United States v. Simmons,
     536 F.2d 827 (9th Cir. 1976) ............................... 21, 22
24
United States v. Turner,
25   926 F.2d 883 (9th Cir. 1991) .................................... 19

26
United States v. Williams,
     782 F.2d 1462 (9th Cir. 1985) ................................... 21
27
Zedner v. United States,
28   547 U.S. 489 (2006) ........................................ 13, 24

**Statutes**

18 U.S.C. § 1035.................................................... 1

18 U.S.C. § 1341.................................................... 1

18 U.S.C. § 1343.................................................... 1

18 U.S.C. § 3161................................................. 2, 4

18 U.S.C. § 3161(c)(1).......................................... 2, 9

18 U.S.C. § 3174.................................................... 6

18 U.S.C. § 3161(h)(6).................................. 2, 3, 9, 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant MIRALI ZARRABI, M.D. ("ZARRABI") moves to dismiss all of the charges in the First Superseding Indictment ("FSI") against him with prejudice based on alleged violations of the Sixth Amendment and Speedy Trial Act.  (Dkt. 1157, the "Motion" or "Mot.")  ZARRABI's exact arguments have been previously considered and rejected by this Court in connection with his prior motions for severance.  (Dkt. 447, 596, 938.)  Additionally, ZARRABI's Motion ignores that nearly half of his claimed delay -- approximately 17 months -- is a result of the COVID-19 pandemic, which has delayed hundreds of similarly situated defendants in this District.  In a recent Ninth Circuit decision addressing this very issue, a unanimous panel held that while the Sixth Amendment is "among the most important protections guaranteed by our Constitution," courts like this one have appropriately weighed criminal defendants' and the public's right to a speedy and public trial against the continued public health and safety issues posed by the COVID-19 pandemic.  United States v. Olsen, 995 F.3d 683, 695 (9th Cir. 2021).  For the reasons that follow, ZARRABI's Motion should be denied.

**II.   STATEMENT OF FACTS**

   **A.   ZARRABI was Indicted on January 24, 2018 and the Court Set a Trial Date of May 1, 2018**

On January 24, 2018, ZARRABI was charged in the FSI with 28 counts of mail fraud, in violation of 18 U.S.C. § 1341; three counts of wire fraud, in violation of 18 U.S.C. § 1343; and two counts of false statements relating to health care matters, in violation of 18 U.S.C. § 1035.  (Dkt. 12.)  ZARRABI made his initial appearance in

1

this District on February 28, 2018 where the court granted his request for pretrial release.  (Dkt. 47.)  At ZARRABI's post indictment arraignment, the Court set a trial date of May 1, 2018. (Id.)  On March 6, 2018, given the complex nature of the case, the Court issued a Complex Case Management Order setting a status conference for March 21, 2018.  (Dkt. 52.)  The Speedy Trial Act, 18 U.S.C. § 3161, originally required that ZARRABI's trial commence on or before July 10, 2018 -- 70 days after his initial appearance in the district of prosecution.  See 18 U.S.C. § 3161(c)(1).

**B.  ZARRABI Requested a Continuance from May 1, 2018 to October 9, 2018**

On March 20, 2018, the day before the parties' status conference, the parties filed a stipulation to continue the trial date at ZARRABI's request from May 1, 2018, to October 9, 2018 (Dkt. 81), which the Court granted shortly thereafter with appropriate findings of excludable time (Dkt. 92).

**C.  The Court Granted 90-Day Stay Followed by Two Extensions**

On October 1, 2018, due to conflicts of interest between counsel for co-defendants Julian Omidi ("Omidi") and Independent Medical Services, Inc. ("IMS"), the Court disqualified counsel and stayed the proceedings for 90-days, or until defendants Omidi and IMS retained new counsel.  (Dkt. 384.)  On October 5, 2018, in response to the government's ex parte application, the Court vacated the October 9, 2018 trial date and set a status conference for January 16, 2019. (Dkt. 388.)  The Court made proper findings of excludable time pursuant 18 U.S.C. §§ 3161(h)(6), (h)(7)(A), (h)(7)(B)(i), (h)(7)(B)(ii), (h)(7)(B)(iv), and (h)(1)(D) given the pendency of several motions including motions to compel filed by Omidi.

On January 16, 2018, the Court held a status conference and, at co-defendants' Omidi and Surgery Center Management, LLC's ("SCM") request (Dkt. 412), extended the stay until February 20, 2019 (Dkt. 417).  Once again, the Court made appropriate findings of excludable time and noted, pursuant to 18 U.S.C. § 3161(h)(6), the extension "constitute[d] a reasonable period of delay for defendants IMS and ZARRAI, who are joined for trial with codefendants as to whom the time for trial has not run . . .."  (Id.)

On February 15, 2019, counsel for Omidi filed an ex parte application to continue the status conference due to a familial emergency (Dkt. 445), which the Court granted along with findings of excludable time (Dkt. 446).

### D.   The Court Denied ZARRABI's First Motion for Severance

On January 23, 2019, ZARRABI filed his first motion for severance asserting, among other things, a "serious and undeniable risk that a joint trial" would violate ZARRABI's Sixth Amendment right and that "[a]ny further delay . . . [would be] in violation of his rights under the Speedy Trial Act."  (Dkt. 432.)

On February 28, 2019, the Court issued an order denying ZARRABI's motion, noting that his belated claims of a future speedy trial violation were premature and somewhat "disingenuous," given his counsel's prior statements to the government about the time needed to prepare for this complex trial.  (Dkt. 447.)

### E.   ZARRABI's Co-Defendants Requested Continuances to December 3, 2019 and October 13, 2020

On February 28, 2019 -- the same day the Court heard argument on ZARRABI's first motion for severance -- the Court also continued the status conference to April 3, 2019.  Once again, the Court made

3

appropriate findings of excludable time pursuant to 18 U.S.C. § 3161. (Dkt. 451.)

At the April 3, 2019 status conference, the Court lifted the stay and set the matter for trial on December 3, 2019.  (Dkt. 478; 497 (order setting forth findings of excludable time).)  While SCM waived its rights and the remaining codefendants did not state their positions, ZARRABI declined to waive his Speedy Trial Right.  (Dkt. 478.)  However, as before, ZARRABI did not file any opposition nor motion related to purported violations of his Sixth Amendment or Speedy Trial Right.

At the June 26, 2019 status conference, ZARRABI requested leave to file a renewed motion for severance, which the Court granted. (Dkt. 539.)  Additionally, Omidi's newly appointed counsel and counsel for SCM requested to continue the trial date to October 13, 2020, which the Court approved.  (Id.; Dkt. 542 (order setting forth findings of excludable time).)

## F.   The Court Denied ZARRABI's First Renewed Motion for Severance

On July 26, 2019, ZARRABI filed his first renewed motion for severance, which largely incorporated his prior arguments and reiterated that there remained "a serious and undeniable risk" that a joint trial would violate ZARRABI's Sixth Amendment and Speedy Trial Right.  (Dkt. 548.)  ZARRABI did not claim any existing violation, which would necessitate dismissal, but rather a severance to "avoid violating [ZARRABI's] constitutional and statutory rights."  (Id.)

On November 6, 2019, the Court denied ZARRABI's renewed motion. (Dkt. 596.)  After a thorough analysis of the Barker factors, the Court found that (i) the two-year delay between ZARRABI's initial

4

email objection in October 2018 and the scheduled October 2020 trial date did not greatly exceed the threshold or weigh in ZARRABI's favor given the "complexity of the broad fraud scheme charged in this case and the volume of discovery"; (ii) the delay was caused by defense needs for adequate preparation and not caused by the government; (iii) ZARRABI's assertion of speedy trial rights was neutral given his failure to file any opposition until nearly a year into the case; and (iv) ZARRABI failed to show actual prejudice rather than bare, conclusory claims.  (Id.)  Accordingly, the Court found the October 13, 2020 trial date did not violate ZARRAI's right to a speedy trial.  (Id.)

**G.    The COVID-19 Pandemic and Judicial Measures Taken in Response**

Beginning on March 13, 2020, the Central District of California issued a series of emergency orders in response to the COVID-19 pandemic.  See, e.g., General Order Nos. 20-02 (Mar. 13, 2020); 20-05 (Apr. 13, 2020); 20-08 (May 28, 2020); 20-09 (Aug. 6, 2020); 21-03 (Mar. 19, 2021); Chief Judge Order No. 20-179 (Dec. 7, 2020); see also http://www.cacd.uscourts.gov/news/coronavirus-covid-19-guidance (cataloguing most orders).  Those orders were based on national, state, and local declarations of a public health emergency and the Centers for Disease Control and Prevention's recommendations for reducing exposure to the virus and slowing its spread.

As part of its pandemic response, the Central District Court suspended all jury trials.  The suspension began on March 13, 2020 and was extended on April 13, 2020, May 28, 2020, August 6, 2020, and March 19, 2021.  Order 20-02; Order 20-05; Order 20-08; Order 20-09; Order 21-03.  Each suspension order was entered upon unanimous or

majority votes of the district judges "to protect public health" and "to reduce the size of public gatherings and reduce unnecessary travel," consistent with the recommendations of public health authorities.  Order 20-02 at 1; Order 20-05 at 1; Order 20-08 at 1; Order 20-09 at 1.  The August 2020 order recognized an increase in COVID-19 rates of infection, hospitalizations, and deaths in the Central District and explained that jury trials would endanger the health of prospective jurors, defendants, attorneys, and court personnel.  Order 20-09 at 3.  The order therefore found "that suspending criminal jury trials in the Central District of California because of the increase in reported COVID-19 infections, hospitalizations, and deaths serve[d] the ends of justice and outweigh[ed] the interests of the public and the defendants in a speedy trial."  Id.

Also on March 13, 2020, the Chief Judge of the Central District of California declared a judicial emergency under 18 U.S.C. § 3174, which the Ninth Circuit's Judicial Council subsequently approved. See In re Approval of Judicial Emergency in the Central Dist. of Cal., 955 F.3d 1140, 1141 (9th Cir. 2020).  The Judicial Council's order observed that the President had declared a National Emergency in response to the COVID-19 pandemic and that public health authorities had recommended physical distancing and cautioned against gatherings of more than 10 people.  Id. at 1142.  "The welfare of the court, federal public defenders, CJA attorneys, U.S. Marshals Service, and defendants are placed at risk each time parties congregate in person for hearings and defendants are transported to and from the courthouse."  Id. at 1144.  The Council recognized that

it was not feasible to comply with the STA's deadlines while adhering to public health guidelines.  Id. at 1144–45.

### H.   Trial Continued to May 4, 2021 Due to COVID-19 Pandemic

In light of the surge in COVID-19 infections in Los Angeles County and the inability to safely conduct jury trials, at the July 1, 2020 status conference, the Court indicated its intent to continue the October 2020 trial date to a date tentatively in April 2021, to be agreed upon by the parties.  (Dkt. 707.)  Although ZARRABI maintained his objection to a further continuance, the parties ultimately requested that the trial be scheduled for May 4, 2021, in order to accommodate ZARRABI's counsel's schedule.  (Dkt. 708.)  The Court thereafter set trial for May 4, 2021, and issued findings confirming the public health reasons for the continuance.  (Dkt. 725 at 1-2 (citing "the grave public-health concerns discussed in General Orders 20-042 and 20-03" and the "unusual and emergent circumstances" justifying a continuance).)

### I.   The Court Denied ZARRABI's Second Renewed Motion for Severance

On August 21, 2020, ZARRABI filed a second renewed motion for severance rehashing his prior arguments, which were previously rejected by the Court.  (Dkt. 751.)  Again, ZARRABI did not seek dismissal for any purported violation of his Speedy Trial Right, but rather a severance "to avoid violating [ZARRABI's] constitutional and statutory rights."  (Id.)  Completely absent from ZARRABI's second renewed motion was any acknowledgment of the "unusual and emergent circumstances" of the unprecedented COVID-19 pandemic that caused this Court to conclude that a further continuance was required.  (See generally id.)

7

1     On January 15, 2021, the Court denied ZARRABI's second renewed

2     motion.  (Dkt. 938.)  Like before, the Court provided a thorough

3     analysis of the <u>Barker</u> factors and noted that in light of the COVID-

4     19 pandemic, even if it were inclined to sever ZARRABI's trial (which

5     it was not), "it would be impractical, if not impossible, to conduct

6     a trial on the charges solely against ZARRABI before the scheduled

7     May 2021 trial date."  (<u>Id.</u>)  The Court further found, as before,

8     that (i) while the length of delay weighed moderately in ZARRABI's

9     favor, it was "not unprecedented . . . considering the complexity of

10    the broad fraud," "the huge volume of discovery," and "the

11    unprecedented COVID-19 pandemic"; (ii) the government could not be

12    faulted for the delay, weighing against a severance; (iii) ZARRABI's

13    assertion of his Speedy Trial Right remained neutral; and (iv)

14    ZARRABI again failed to establish prejudice beyond what normally

15    accompanies any criminal prosecution.  (<u>Id.</u>)

16
         **J.    Trial Continued from May 4, 2021 to Current Date of**
17       **September 21, 2021**

18        On January 25, 2021, while the country continued to grapple with

19    the COVID-19 pandemic, including the continued suspension of jury

20    trials in this District, the government and defendants Omidi and SCM

21    filed a stipulation to continue the trial date from May 4, 2021 to

22    August 31, 2021.  (Dkt.  942.)  At the February 17, 2021 status

23    conference, understanding that the proposed August 31, 2021 date

24    posed a conflict for ZARRABI's counsel, the Court ordered the parties

25    to meet and confer on a new trial date that would accommodate

26    ZARRABI's counsel's schedule.  (Dkt. 970 at 1.)  Without waiving

27    ZARRABI's objection to any trial continuance, ZARRABI's counsel

28    proposed September 21, 2021 -- nearly a month after the government

1  and defendants Omidi and SCM's suggested date.  (<u>Id.</u>)  On March 23,
2  2021, the Court granted the government's <u>ex parte</u> application and
3  continued the trial to its current date: September 21, 2021.  (Dkt.
4  1008.)  The Court's order, which incorporated the government's
5  application and facts related to the COVID-19 pandemic, set forth
6  appropriate findings of excludable time.  (<u>Id.</u>)

7  **III. LEGAL STANDARD**

8       The Sixth Amendment guarantees all criminal defendants "the
9  right to a speedy and public trial." U.S. Const. amend. VI.  To give
10 effect to this Sixth Amendment right, Congress enacted the Speedy
11 Trial Act, which requires that a criminal trial begin within seventy
12 days from the date on which the indictment was filed, or the date on
13 which the defendant makes an initial appearance, whichever occurs
14 later. 18 U.S.C. § 3161(c)(1).  Recognizing the need for flexibility
15 depending on the circumstances of each case, however, the Speedy
16 Trial Act "includes a long and detailed list of periods of delay that
17 are excluded in computing the time within which trial must start."
18 <u>Olsen</u>, 995 F.3d at 686 (quoting <u>Zedner v. United States</u>, 547 U.S.
19 489, 497 (2006)).  For example, the Speedy Trial Act includes a
20 provision for joined defendants, allowing for the exclusion of time
21 where a "defendant is joined for trial with a codefendant as to whom
22 the time for trial has not run and no motion for severance has been
23 granted." § 3161(h)(6).  It also includes an ends of justice
24 provision, allowing for the exclusion of time where a district court
25 finds "that the ends of justice served by taking such action outweigh
26 the best interest of the public and the defendant in a speedy trial."
27 <u>Id.</u> § 3161(h)(7)(A).

28

Speedy trial challenges are subject to a four-part inquiry governed by <u>Barker v. Wingo</u>, 407 U.S. 514 (1971).  The four factors are: "(1) whether delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice" because of the delay.  <u>Doggett v. United States</u>, 505 U.S. 647, 651 (1992). "[N]one of the four factors . . . [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  <u>Barker</u>, 407 U.S. at 533.

## IV.  ARGUMENT

### A.  There Has Been No Sixth Amendment Violation

For the first time, ZARRABI argues that his Sixth Amendment right has been violated and that the Court should dismiss the case with prejudice.  (Mot. at 16.)  ZARRABI's argument is not persuasive. For reasons similar to those thoroughly analyzed by the Court in its prior analysis of the <u>Barker</u> factors in connection with ZARRABI's previous motions for severance, consideration of all four factors still militates against a Sixth Amendment violation.[1]

---

[1] As discussed <u>infra</u>, ZARRABI's rights under the Speedy Trial Act have likewise not been violated.  The Ninth Circuit has held that "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated."  <u>United States v. Nance</u>, 666 F.2d 353, 360 (9th Cir. 1982); <u>United States v. Baker</u>, 63 F.3d 1478, 1497 (9th Cir. 1995) ("[T]he Speedy Trial Act affords greater protection to a defendant's right to a speedy trial than is guaranteed by the Sixth Amendment, and therefore a trial which complies with the Act raises a strong presumption of compliance with the Constitution.").

1              1.   Length of delay

2         The first Barker factor, the length of delay, weighs against a

3    Sixth Amendment violation.  Here, the length of delay between the FSI

4    and the current trial date is approximately 42 months.  While this

5    Court previously held the delay "weighs moderately in ZARRABI's

6    favor," it concluded that such delay was not unprecedented

7    considering the complexity of the broad fraud scheme charged in this

8    case and the huge volume of discovery.  (Dkt. 938 at 4.)  Moreover,

9    during the past 18 months the Court -- and the world -- have been

10   grappling with the unprecedented COVID-19 pandemic.  Indeed, after a

11   15-month long hiatus, jury trials in the Western Division only just

12   resumed in June 2021.

13        The delay here is not unlike that in Olsen, where the delay

14   between defendant's indictment and the trial date was nearly 40

15   months.  Olsen, 995 F.3d at 685.  In reversing the lower court's

16   dismissal for speedy trial violations, the Ninth Circuit recognized

17   that "[t]he pandemic is an extraordinary circumstance" and

18   defendants' and the public's right to a speedy and public trial must

19   be balanced against the risk posed to the health and safety of those

20   involved, including prospective jurors, defendants, attorneys, and

21   court personnel.  Id. at 695.  As in Olsen, it has not been possible

22   nor realistic to conduct a lengthy jury trial prior to our current

23   trial date.  Thus, the length of delay in this case is justified and

24   this factor weighs against dismissal.

25             2.   Reason for delay

26        The reasons for delay in this case also weigh strongly against

27   dismissal.  "[T]he reason for the delay . . . is the focal point of

28   the [Barker] inquiry."  United States v. King, 483 F.3d 969, 976 (9th

                                   11

Cir. 2007).  "A deliberate attempt to delay the trial in order to hamper the defense should be weighted less heavily." Id.  "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." Id.  "[D]elay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial argument." McNeely v. Blanas, 336 F.3d 822, 827 (9th Cir. 2003).

Here, the government has been, and remains, blameless for the instant delay.  ZARRABI's Motion all but concedes this point. (See Mot. at 13.)  Instead, the parties' recent inability to proceed to trial arises solely and exclusively out of "a valid reason," Barker, 407 U.S. at 531, to wit, the policy of the Central District, which itself was designed to protect the public and Court personnel from the deadly COVID-19 pandemic. Olsen, 995 F.3d 687.  And as to any delay prior to COVID-19, this Court has already found such delay was valid and justified.  (Dkt. 938 ("[T]he continuances of the trial date have been to accommodate Defendants' need for adequate preparation time for pretrial proceedings and trial due to the complexity of the case, the voluminous discovery provided by the Government, the disqualification of two of the co-Defendants' counsel for conflicts of interest, and most recently, the pandemic and its effect on the Court's ability to hold jury trials – all are valid reasons justifying an appropriate delay.").  Moreover, it has, on several instances, been to accommodate the schedule of ZARRABI's counsel that the trial date has been continued to a date later than that originally contemplated, including with respect to the current September 21, 2021 trial date.  Accordingly, this factor too weighs against dismissal.

12

1             3.   Assertion of right to a speedy trial

2       The third Barker factor -- ZARRABI's assertion of his right to a

3 speedy trial -- also militates against dismissal. "[A] defendant's

4 assertion of or failure to assert his right to a speedy trial is one

5 of the factors to be considered in an inquiry into the deprivation of

6 the [Sixth Amendment] right." Barker, 407 U.S. at 528. "[A]n

7 improper or untimely assertion of speedy trial rights may weigh in

8 favor of rejecting a defendant's motion to dismiss for violation of

9 these rights, [but] the mere fact of proper, timely assertion does

10 not warrant dismissal." United States v. Turner, 926 F.2d 883, 889

11 (9th Cir. 1991). "These assertions, however, must be viewed in the

12 light of [defendant's] other conduct." United States v. Loud Hawk,

13 474 U.S. 302, 314 (1986).

14       Here, ZARRABI has consistently failed to file any opposition to

15 past applications for continuances and only just filed a motion to

16 dismiss for a purported Sixth Amendment/Speedy Trial Act violation.

17 His delay in seeking what he claims is the appropriate remedy for his

18 perceived speedy trial right violation sooner, i.e., dismissal, flies

19 in the face of his current position. While ZARRABI cites to each of

20 his prior motions for severance as evidence of his assertion of

21 rights, those only warned of the "risk" of violating his

22 constitutional and statutory rights, but never alleged they were in

23 fact violated. (See generally Dkt. 548, 548, 751.) Indeed, if he

24 were alleging his speedy trial rights had been violated, dismissal --

25 like he seeks now -- would have been the appropriate remedy, not

26 severance. King, 483 F.3d at 972 (noting the remedy of speedy trial

27 right violations is dismissal). Additionally, as noted above, at

28 least two of the recent trial date continuances were prolonged to

1   accommodate ZARRABI's counsel's trial conflicts.  (Dkt. 708, 970.)

2   Thus, ZARRABI's belated assertion of his speedy trial rights weigh

3   against dismissal.

4              4.   Prejudice

5       The final factor -- prejudice to defendant -- does not weigh in

6   ZARRABI's favor.  "Prejudice . . . should be assessed in light of the

7   interests of defendants which the speedy trial right was designed to

8   protect."  Barker, 407 U.S. at 532.  "The three interests which

9   should be considered to determine prejudice are: (1) prevention of

10  oppressive incarceration; (2) minimizing anxiety and concern of the

11  accused; and (3) limiting the possibility that the defense will be

12  impaired."  United States v. Williams, 782 F.2d 1462, 1466 (9th Cir.

13  1985).

14      Here, despite three bites at the apple, ZARRABI still fails to

15  establish prejudice sufficient to warrant dismissal of the charges

16  against him.  For example, while ZARRABI still generally asserts that

17  "witnesses' memories have receded and evidence has grown stale,"

18  (Mot. at 14-15), he continues to speculate rather than provide any

19  actual examples.  ZARRABI's conclusory assertion of prejudice is a

20  far cry from the situation presented in Messer, cited in ZARRABI's

21  Motion, where an "important [defense] witness" died while the three

22  co-defendants waited for trial.  United States v. Messer, 197 F.3d

23  330, 339 (9th Cir. 1999).

24      ZARRABI's generalized claims of psychological harm and stress on

25  him and his family fare no better.  As this Court has previously

26  found, ZARRABI's claimed hardship is not unlike the hardship present

27  in any criminal prosecution.  Dkt. 938 at 6; see also United States

28  v. Simmons, 536 F.2d 827, 831-32 (9th Cir. 1976) ("Conclusory

                                    14

allegations of general anxiety and depression are present in almost every criminal prosecution.  We find nothing in the record which distinguishes the emotional strain experienced by Simmons from other criminal defendants.").  Moreover, ZARRABI's claims of financial hardship are also no different than those previously alleged.  (See Dkt. 751.)  Although ZARRABI claims he is no longer practicing medicine due to an increase in his malpractice insurance (Mot. at 15), he fails to explain why his malpractice insurance would suddenly "skyrocket" 42 months after his indictment.  For instance, ZARRABI's medical corporation received over $900,000 in 2018, $600,000 in 2019, and records show he billed over $900,000 to Medicare alone in the first half of 2020.  (Dkt. 780 at 15.)  In any event, aside from ZARRABI's medical practice, he does not dispute that he and his life partner, Gregory Restum, live in a Beverly Hills home worth $11 million (of which they have $10 million in equity), own several million dollars' worth of rental properties,[2] and Mr. Restum operates multiple successful businesses.  (Id.)  In sum, this is not a case in which a defendant points to the diminishment of his or her sole or primary source of income; these other assets and sources of income for ZARRABI's family undermine any suggestion that he is suffering any real financial hardship by any delay in this case.[3]

---

[2] As in ZARRABI's second renewed motion for severance, he again claims he and Mr. Restum sold a rental property "significantly below market value," however, Mr. Resutm's declaration does not support this point nor specify how much money they received for the rental property.  According to the website, Zillow, it appears they sold the rental property for $3,225,000 in January 2020.  (Dkt. 780 at 15.)

[3] Given the lack of any new facts relating to ZARRABI's repeated arguments of financial hardship due to legal fees and the pending administrative proceedings by the Medical Board of California, the government incorporates its arguments previously made in its opposition to ZARRABI's second renewed motion for severance.  (Dkt. 780 at 16-18.)

15

1    Since all the Barker factors weigh against a Sixth Amendment

2    speedy trial violation, the Court should reject ZARRABI's argument.

3    **B.   ZARRABI's Rights Under the Speedy Trial Act Have Likewise**
     **     Not Been Violated**

4

5    ZARRABI also dedicates the final pages of his Motion to his

6    claim that the indictment should alternatively be dismissed on Speedy

7    Trial Act grounds.  (Mot. at 16.)  There is no basis for this

8    argument.  "It is well established that an exclusion from the Speedy

9    Trial clock for one defendant applies to all codefendants." <u>Messer</u>,

10   197 F.3d at 336.  The Speedy Trial Act further expressly authorizes a

11   continuance for a "reasonable period of delay when the defendant is

12   joined for trial with a codefendant" and no severance has been

13   granted.  18 U.S.C. § 3161(h)(6).  The Ninth Circuit has held that

14   "the proper test is whether the totality of the circumstance warrants

15   a conclusion that the delay was unreasonable." <u>Messer</u>, 197 F.3d at

16   338.  Additionally, the Supreme Court has recognized that the Speedy

17   Trial Act provides district courts with necessary "flexibility in

18   accommodating unusual, complex, and difficult cases." <u>Zedner v.</u>

19   <u>United States</u>, 547 U.S. 489, 508 (2006).

20   Here, the totality of the circumstances does not warrant a

21   finding that the delay in this case is unreasonable.  As an initial

22   matter, ZARRABI acknowledges that eight days remain on the Act's

23   seventy-day clock.  (Mot. at 16.)  His only contention, however, is

24   that this Court's exclusion of time for ZARRABI under Section

25

26

27

28

1   3161(h)(6) was improper under the Ninth Circuit's holding in Messer.[4]

2   (Id.)  ZARRABI's reliance on Messer is misplaced.

3       In Messer, the trial in the Central District of California was

4   continued over the repeated objection of three defendants so that a

5   fourth defendant (Saccoccia) could first contest his extradition from

6   Switzerland and then proceed to trial in Rhode Island.  Messer, 197

7   F.3d at 334.  Saccoccia's Rhode Island trial ended in a mistrial and

8   had to be retried, which caused further delay and an additional

9   opposed continuance of the California trial.  Id. at 334-35.  Once

10  Saccoccia was convicted in Rhode Island and sentenced to 660 years'

11  imprisonment, another opposed continuance was granted to allow him to

12  prepare for trial in California, during which time a defense trial

13  witness died.  Id. at 335, 339.  The Ninth Circuit found that the

14  government's decision to try Saccoccia first on more serious charges

15  in Rhode Island "decreased the chance that he would ever be tried in

16  California" and thus rendered unreasonable the resulting delay (and

17  one-year period of excludable time) while the parties waited for

18  Saccoccia because "the delay did not increase the likelihood of a

19  joint trial."  Id. at 338-39.

20      Unlike the cause of delay in Messer, as this Court has

21  repeatedly acknowledged, the government has not caused the present

22  delay.  Rather, the delay has been a result of co-defendants' need

23

24      [4] The government does not interpret ZARRABI's Motion as
    challenging the Court's exclusion of time pursuant to the end-of-
25  justice provision, nor would that argument have any merit.  In the
    Ninth Circuit's recent decision in Olsen, a case involving over 39
26  months of delay, the court approved the Central District of
    California's previous General Orders suspending jury trials based on
27  "unprecedented public health and safety concerns" under
    § 3161(h)(7)(A)'s ends of justice provision, and ordered the lower
28  court to grant an appropriate ends of justice continuance.  995 F.3d
    at 695.

1    for adequate preparation time for pretrial proceedings and trial due

2    to the complexity of the case, the voluminous discovery, and most

3    recently, the pandemic and its effect on the Court's ability to hold

4    jury trials -- all of which are valid, justified reasons.  See United

5    States v. Butz, 982 F.2d 1378, 1381-82 (9th Cir. 1993) (holding that

6    excludable delay while a co-defendant prepares for trial can be

7    reasonably applied to another defendant).  Moreover, a significant

8    part of the court's ruling in Messer rested on the fact that the

9    three codefendants were substantially prejudiced by the death of

10   their defense witness during the government-caused delay.  Id. at

11   339-40.  By contrast, as noted above, ZARRABI has failed to establish

12   any prejudice -- beyond generalized assertions -- that warrant such

13   relief.  Despite generally claiming that witnesses' memories fade and

14   the "inevitable loss of evidence," (Mot. at 19), he fails to identify

15   any lost evidence or witnesses.

16        Accordingly, ZARRABI has likewise failed to show a violation of

17   the Speedy Trial Act.

18   **V.    CONCLUSION**

19        For the foregoing reasons, ZARRABI's Motion should be denied

20   because no Speedy Trial Act or Sixth Amendment violation has

21   occurred.[5]

22

23        [5] If the Court were to conclude that dismissal was required, it
     should be entered without prejudice.  The relevant factors -- the
24   seriousness of the charges, the facts and circumstances leading to
     the dismissal, the impact of reprosecution on the administration of
25   justice, and the lack of prejudice to ZARRABI's ability to prepare
     his defense -- all weigh in favor of dismissal without prejudice.
26   See United States v. Koerber, 813 F.3d 1262, 1273 (10th Cir. 2016)
     ("The application of the more severe sanction of dismissal with
27   prejudice should be reserved for more egregious STA violations."
     (internal brackets, ellipsis and citation omitted)); see also United
28   States v. Medina, 524 F.3d 974, 986-87 (9th Cir. 2008) (explaining
     that serious crimes weigh in favor of dismissal without prejudice).

18