TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
CATHY J. OSTILLER (Cal. Bar No. 174582)
Senior Litigation Counsel
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2400
    Facsimile: (213) 894-6269
    E-mail:   Kristen.Williams@usdoj.gov
              Cathy.Ostiller@usdoj.gov
              Alex.Wyman@usdoj.gov
              Ali.Moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>JULIAN OMIDI,<br>  aka "Combiz Omidi,"<br>  aka "Combiz Julian Omidi,"<br>  aka "Kambiz Omidi,"<br>  aka "Kambiz Beniamia Omidi,"<br>  aka "Ben Omidi,"<br>SURGERY CENTER MANAGEMENT, LLC,<br>and<br>MIRALI ZARRABI, M.D.,<br>  aka "Mirali Akba Ghandchi<br>    Zarrabi,"<br>  aka "M.A. Ghandchi Zarrabi,"<br><br>      Defendants. | No. CR 17-661(A)-DMG<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT JULIAN OMIDI'S SECOND MOTION TO SUPPRESS EVIDENCE (DKT. 1155), PARTIALLY JOINED BY DEFENDANT SURGERY CENTER MANAGEMENT, LLC (DKT. 1161); DECLARATION OF JARED DAVIS AND EXHIBITS THERETO<br><br>Hearing Date: September 1, 2021<br>Hearing Time: 4:30 p.m.<br>Trial Date:   September 21, 2021<br>Trial Time:   8:30 a.m.<br>Place:       Courtroom of the<br>              Hon. Dolly M. Gee |

1      Plaintiff United States of America, by and through its counsel

2  of record, the Acting United States Attorney for the Central District

3  of California and Assistant United States Attorneys Kristen A.

4  Williams, Cathy J. Ostiller, Alexander C.K. Wyman, and Ali Moghaddas,

5  hereby files its Opposition to Defendant JULIAN OMIDI's Second Motion

6  to Suppress Evidence Obtained from Unreasonable Searches and Seizures

7  at Three Additional Premises, in which defendant SURGERY CENTER

8  MANAGEMENT, LLC has partially joined.

9      This Opposition is based upon the attached memorandum of points

10 and authorities, the declaration of Jared Davis and exhibits thereto,

11 the files and records in this case, and such further evidence and

12 argument as the Court may permit.

13  Dated: August 17, 2021          Respectfully submitted,

14                                  TRACY L. WILKISON
                                    Acting United States Attorney
15
                                    SCOTT M. GARRINGER
16                                  Assistant United States Attorney
                                    Chief, Criminal Division
17

18                                  _____
                                    KRISTEN A. WILLIAMS
19                                  CATHY J. OSTILLER
                                    ALEXANDER C.K. WYMAN
20                                  ALI MOGHADDAS
                                    Assistant United States Attorneys
21
                                    Attorneys for Plaintiff
22                                  UNITED STATES OF AMERICA

23

24

25

26

27

28

                                    2

1

<strong>MEMORANDUM OF POINTS AND AUTHORITIES</strong>

2
**I.    INTRODUCTION**

3
     This Court has already found the government's search warrants in

4
this case were supported by probable cause, sufficiently particular,

5
and not overbroad.  Undeterred, defendant JULIAN OMIDI ("OMIDI")

6
files a second, nearly identical motion to suppress -- this time

7
attacking three additional search locations on the same grounds as

8
before.  (Dkt. 1155, "Motion" or "Mot.")  However, like before, OMIDI

9
does not have standing to challenge the warrants that are the subject

10
of this Motion.  Defendant SURGERY CENTER MANAGEMENT, LLC ("SCM") has

11
partially joined in this Motion as to one of the three locations

12
only.  (Dkt. 1161, ("Joinder").)  While SCM may have standing as to

13
that location, its claims, like OMIDI's, advance arguments already

14
squarely rejected by this Court's August 6, 2021 Order (Dkt. 1172,

15
("Order").)  For the reasons articulated in the Order, and those set

16
forth below, the Motion should be denied.

17
**II.   STATEMENT OF FACTS**

18
     The Court is no doubt familiar with the government's

19
investigation in this case, including the majority of search warrants

20
that were executed on June 4, 2014.[1]

21
     The challenged warrants at issue in this Motion include (1) 9001

22
Wilshire Boulevard, Suite 207 (14-1035M) (the "Suite 207 Warrant");

23
(2) the server located at 624 South Grand Avenue (14-1030M) (the

24
"Server Warrant"); and (3) 5353 Desert Inn, Apartment 1112, Las

25
Vegas, Nevada (14-375M (D. Nevada)) (the "Las Vegas Warrant").  Both

26

27
     [1] For brevity, the government incorporates its statement of
facts from its opposition to OMIDI's first motion to suppress,

28
including its defined terms that retain their same meaning herein.
(Dkt. 1101 at 3-10.)

1

the Suite 207 Warrant and the Server Warrant were supported by the Master Affidavit.  The Las Vegas Warrant was obtained in the District of Nevada and supported by the affidavit of Internal Revenue Service, Criminal Investigation Special Agent ("SA") Carlos R. Tropea ("Las Vegas Affidavit").  The Las Vegas Affidavit was submitted in support of an application to search Farrell Newton's ("Newton") residence. (Dkt. 1155, Ex. 4 at ¶ 6.)  Newton was hired from at least 2008 through 2011 by OMIDI and his family as a financial advisor and tax preparer.  (Id. at ¶ 15.)  The items to be seized by the Las Vegas Warrant included evidence and instrumentalities of tax crimes, including tax evasion and preparation of false tax returns.  (Id. at ¶ 12.)  The Las Vegas Affidavit detailed, among other things, SA Tropea's review of 89 Get Thin business-entity tax returns that underreported revenue by over $160 million between 2008 and 2012. (Id. ¶¶ 39-49.)  The Las Vegas Affidavit also detailed OMIDI's failure to file personal tax returns in 2011 and 2012 despite IRS records indicating OMIDI had earned millions in taxable income.  (Id. at ¶¶ 52-53.)

**III. ARGUMENT**

    **A.    OMIDI Fails to Establish Standing Again**

    A defendant bears the burden of establishing standing to challenge a warrant.  See United States v. Reyes-Bosque, 596 F.3d 1017, 1026 (9th Cir. 2010).  To have standing to assert a Fourth Amendment challenge, "an individual must have a legitimate expectation of privacy in the invaded place" and "must demonstrate a subjective expectation of privacy in the area searched, and their expectation must be one that society would recognize as objectively

1    reasonable."  <u>United States v. SDI Future Health, Inc.</u>, 568 F.3d 684,

2    695 (9th Cir. 2009) (citations and quotation marks omitted).

3         Here, like before, OMIDI lacks standing to challenge all of the

4    warrants raised in his Motion.  Rather than attempt to engage with

5    the factors that the Ninth Circuit has indicated could inform a

6    determination of whether a requisite personal connection exists in a

7    common or shared space, <u>id.</u> at 698, OMIDI instead directs the Court

8    "to more closely review the extensive details of his and SCM's

9    showing for standing in support of the First Motion."  (Mot. at 10.)

10   However, the Court did closely review OMIDI and SCM's previous

11   declarations and correctly held that OMIDI did not meet his burden.

12   (Order at 7.)  As before, OMIDI has failed to establish standing for

13   any of the challenged warrants.

14             1.   The 207 Warrant

15        As he claimed with Suite 800E at 9100 Wilshire Blvd., OMIDI

16   continues to push a manufactured narrative that he exercised

17   exclusive "possession and control" over the "entirety of the records

18   and files" at Suite 207 at 9001 Wilshire Blvd.  (Dkt. 1155-1 at ¶¶ 3-

19   4.)[2]  Again, OMIDI's reliance on "bald assertions of possession and

20   control" are not supported by the objective evidence.  (Order at 7.)

21   Rather, application of the <u>SDI Future Health, Inc.</u> factors (which

22   OMIDI's Motion completely omits) makes clear that OMIDI also lacks

23   standing to challenge the Suite 207 Warrant.  568 F.3d at 698.

24

25

26   _____

27        [2] As noted in the Court's Order, OMIDI's argument is an
     interesting one:  on the one hand disclaiming any direct leadership
     role with respect to the Get Thin network, while, on the other hand,

28   somehow still maintaining that he had "exclusive" possession and
     control of the entirety of at-issue locations.  (Order at 7.)

                                    3

1    First, OMIDI has not claimed -- and cannot claim -- that the

2    items seized from Suite 270 were his personal property.  It is beyond

3    dispute that the records seized from Suite 207 consisted primarily of

4    physical medical records.  (See Declaration of Jared Davis ("Davis

5    Decl.") at ¶ 6; Dkt. 1114, Ex. D at 366-95 (itemizing materials

6    seized from Suite 207).)  Indeed, photographs taken by agents at the

7    search warrant execution clearly show that Suite 207 was a room used

8    primarily to store patient files.  (Id. at ¶ 5; see also id. at ¶ 4

9    (Exhibit A to Davis Decl. depicting layout of Suite 207).)

10   Second, notwithstanding OMIDI's conclusory claims, the objective

11   evidence demonstrates that OMIDI did not exercise custody or

12   immediate control of the items seized, and he does not claim to have

13   been present during the search.  In fact, as cited in the Court's

14   Order, at least one former Get Thin employee has previously testified

15   that prior to the search warrant executions in 2014, OMIDI was

16   working from an entirely different building (i.e., 9100 Wilshire

17   Blvd.).  (See Order at 7.)

18   Third, and finally, OMIDI's asserted authority as a manager or

19   contract consultant for SCM (which itself does not claim to have

20   standing (see generally Joinder)), rather than acting in a personal

21   capacity to secure personal documents, makes his standing argument

22   even more attenuated than in SDI Future Health, Inc. where the Ninth

23   Circuit held that "managerial authority" alone was insufficient to

24   confer standing.  568 F.3d at 698.

25   OMIDI's reference to his signature on a lease assignment in a

26   guarantor capacity, or inclusion in the landlord's three-day notice

27   to pay or quit (along with the legal tenant), does not require a

28   different result.  OMIDI has not cited to, and the government has not

4

found, any authority for such a proposition.  Suite 207 was leased to
Beverly Hills Surgery Center, LLC, for which Cindy Omidi was the
manager.  (Dkt. 1155-4 at 66-67.)  OMIDI has not explained his
connection to this entity.  And even if OMIDI could establish a
personal connection with this space (he cannot), he does not even
specify what personal records were allegedly seized in this location.
Under these circumstances, OMIDI has failed to establish standing to
challenge the Suite 207 Warrant.

        2.   The Server Warrant

OMIDI likewise lacks standing to challenge the Server Warrant.
While OMIDI's declaration asserts generalized, self-serving claims
that he somehow had a reasonable expectation of privacy in a server
that hosted terabytes of data for a variety of the Get Thin entities,
such an expectation is not objectively reasonable.  By OMIDI's own
admission, the sever system hosted the Get Thin entities' data to
include "the Nextech document management system," "patient related
information," and company emails for the multitude of Get Thin
entities that SCM allegedly managed.  (Dkt. 1151-1 at ¶ 5.)  The
server was therefore accessed by no less than dozens of employees and
contractors on a daily basis.  OMIDI's expectation of privacy over
the entirety of a business' server is unreasonable.  Again, beyond
moving to suppress everything, OMIDI fails to identify with
particularity which documents were seized that were allegedly his
personal records.  See SDI Future Health, Inc., 568 F.3d at 698
(standing may be shown by "some personal connection to the places
searched and the materials seized").

OMIDI cites the Master Affidavit as evidence that the server
system was owned by SCM and that OMIDI handled "major issues relating

5

1    to its functioning."  (Mot. at 3-4.)  However, as recognized by this

2    Court and the authorities it cites, having some vague managerial

3    authority with respect to SCM or taking general security precautions

4    -- which are virtually the same arguments OMIDI make in his

5    unsuccessful bid for standing over the location at 9100 Wilshire,

6    Suite 800E -- does not suffice to demonstrate standing.  (See Order

7    at 8.)  Additionally, nowhere does the Master Affidavit (much less in

8    the two paragraphs cited by OMIDI) suggest that OMIDI dealt with

9    "major issues relating to [the server's] functioning."  (See

10   generally id.)  Instead, the paragraphs he cites reflects that the

11   servers housed GET THIN business records and that an IT consultant

12   and his company rented and accessed the space.

13        Accordingly, OMIDI has failed to demonstrate the requisite

14   standing to challenge the Server Warrant.

15             3.   The Las Vegas Warrant

16        Finally, OMIDI argues that he has standing to challenge the

17   search of his tax preparer's residence in Las Vegas because he had

18   personal papers there.  (Mot. at 11.)  In a final, throwaway

19   paragraph in his declaration, OMIDI states that he "expected Mr.

20   Newton to handle these records with precautions and confidentiality

21   because they belonged to me and I had the obligation to maintain

22   them, secure them from view from others, and to keep them personal,

23   confidential, and private."  (Dkt. 1155-1 at ¶ 8.)  Essentially,

24   OMIDI's argument implies that he has standing to challenge the

25   searches of any locations in which his "personal papers" were found

26   so long as he aspired that they stay "secure."  But that is not the

27   law.  If it were, any defendant would effectively have de facto

28   standing over the searches of his or her personal property regardless

                                    6

of where it was found by simply incanting the phrase: "I expected it to be kept secure."  The out-of-district cases OMIDI relies on are inapposite.  See United States v. Najarian, 915 F. Supp. 1441, 1452 (D. Minn. 1995) (noting that defendant was one of only four people who had a key to the office searched and outlining the great lengths he took to keep the records secret); United States v. Mancini, 8 F.3d 104, 107 n.6 (1st Cir. 1993) (concluding defendant had secured his personal calendar in "the locked archive room, and [had] instructed his Chief of Staff that 'no one was to have access to any of [his] boxes, including the box containing the calendars, without permission.'"); Lord v. Kelley, 223 F. Supp. 684, 689 (D. Mass. 1963) (relying on automatic standing rule, which the Supreme Court struck down twenty years later in United States v. Salvucci, 448 U.S. 83, 84-85 (1980)).

Here, the fact that some documents seized from OMIDI's tax preparer's residence may have at one point been owned by OMIDI does not give him standing to challenge the search of an area in which he had no legitimate expectation of privacy.  See Salvucci, 448 U.S. at 92 (declining "to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched").  Because OMIDI's claimed expectation of privacy in Newton's residence is unreasonable, he fails to establish standing to challenge the Las Vegas Warrant.[3]

---

[3] Like his other challenges, OMIDI also fails to identify any particular documents he is moving to suppress that were seized pursuant to the Las Vegas Warrant, nor has he pointed to any documents on the government's exhibit list that came from that search.

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    The Challenged Warrants Were Valid**

Setting aside OMIDI's failure to establish legal standing for any of the challenged warrants, even if this Court were to consider OMIDI's repeated arguments of defects as to particularity, limitation of scope, and probable cause, they each fail.

The Suite 207 Warrant and Server Warrant were each based on comprehensive affidavits, including the 166-page Master Affidavit that exhaustively listed an array of criminal conduct, which this Court already ruled established probable cause to believe that the Get Thin entities were permeated with fraud.  (Order at 14.)  That ruling, therefore, allowed for a more generalized seizure of business documents, particularly where, as the Master Affidavit discussed, it was not possible to create a more precise description to segregate business records that would be evidence of fraud from those that would not.  See Offices Known as 50 State Distributing Co., 708 F.2d 1371, 1374 (9th Cir. 1983).  The Court's order went further, holding that even if the "permeated with fraud" doctrine did not apply, the warrants relying on the Master Affidavit contained the requisite particularity (Order at 14), and were not overbroad under the facts and circumstances presented (id. at 16).

Here, OMIDI does not advance any new arguments not previously considered and rejected by the Court.  Given the Suite 207 Warrant and Server Warrant's similar reliance on the Master Affidavit, which included detailed information about those locations (Dkt. 1101, Ex. A at 285-288, 306-309), and the evidence and instrumentalities of the subject offenses that would be found there (id.), the Court's prior order applies equally to OMIDI's instant challenge.  (See Order at 15 (rejecting OMIDI's repeated argument that 23 categories of items to

1    be seized were not limited in scope to the alleged Lap-Band fraud);

2    id. at 16-17 (rejecting OMIDI's repeated argument that the warrants'

3    authorization to seize "any other aspect of the business" was

4    overbroad); id. (rejecting OMIDI's repeated argument that the Master

5    Affidavit did not establish probable cause that some 100 entities had

6    any involvement in these crimes); id. at 18 (rejecting OMIDI's

7    repeated argument that it was somehow improper that the government

8    seized the devices and reviewed them offsite).)

9         Last, OMIDI dedicates three sentences to challenge the purported

10   overreach of the Las Vegas Warrant.  (Mot. at 7-8.)  OMIDI claims the

11   Las Vegas Warrant's permission to seize his financial records from

12   January 1, 2008 through the date of execution was overbroad in light

13   of the offense conduct and time frame supported by probable cause.

14   (Id.)  However, the subject offenses at issue in the Las Vegas

15   Warrant specifically included tax evasion offenses (Dkt. 1155, Ex. 4

16   at ¶ 12), and the probable cause section established that the Get

17   Thin entities were underreporting over $160 million during at least

18   2008 through 2012 (id. at ¶ 39), including OMIDI's own failure to

19   file tax returns for 2011 and 2012 despite earning millions in

20   taxable income (id. at ¶¶ 52-53).  Accordingly, given the

21   comprehensive details provided in the affidavit, the Las Vegas

22   Warrant was not overbroad.[4]

23

24

25

_____

26       [4] In the event any of these warrants were in any way deficient,
     as this Court has already found, "there 'was enough information so
27   that objectively reasonable officers were entitled to rely on the
     magistrate judge's determination' of probable cause."  (Dkt. 1172 at
28   21 (quoting United States v. Clark, 31 F.3d 831, 835 (9th Cir.
     1994)).

**C.   No Evidentiary Hearing Is Warranted**

As with OMIDI's first motion to suppress, the instant Motion does not raise a "significant disputed factual issue" warranting an evidentiary hearing.  United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000).  Rather, as before, OMIDI's Motion rests primarily on legal arguments regarding whether the challenged warrants satisfied the particularly and breadth requirements, which this Court has previously decided without need for an evidentiary hearing. Accordingly, like before, an evidentiary hearing is not required.

**IV.  CONCLUSION**

For the foregoing reasons, OMIDI's repeat Motion should be denied in its entirety.