TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
CATHY J. OSTILLER (Cal. Bar No. 174582)
Senior Litigation Counsel
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
ALI MOGHADDAS (Cal. Bar No. 305654)
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture Sections
        1100/1400 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0526/6159/2435/1786/2686
        Facsimile: (213) 894-6269/0142
        E-mail:    Kristen.Williams@usdoj.gov
                   Cathy.Ostiller@usdoj.gov
                   Alex.Wyman@usdoj.gov
                   Ali.Moghaddas@usdoj.gov
                   James.Dochterman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-00661(A)-DMG-1 |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S OPPOSITION TO DEFENDANT SURGERY CENTER MANAGEMENT LLC'S MOTION FOR RETURN OF PROPERTY FOR ATTORNEYS' FEES |
| JULIAN OMIDI, aka "Combiz Omidi," aka "Combiz Julian Omidi," aka "Kambiz Omidi," aka "Kambiz Beniamia Omidi," aka "Ben Omidi," SURGERY CENTER MANAGEMENT, LLC, and MIRALI ZARRABI, M.D., aka "Mirali Akba Ghandchi Zarrabi," aka "M.A. Ghandchi Zarrabi," | Hearing Date: September 1, 2021 Hearing Time: 4:30 p.m. Trial Date:   September 21, 2021 Trial Time:   8:30 a.m. Place:        Courtroom of the               Hon. Dolly M. Gee |
| Defendants. | |

1    Plaintiff United States of America, by and through its counsel

2  of record, the Acting United States Attorney for the Central District

3  of California and Assistant United States Attorneys Kristen A.

4  Williams, Cathy J. Ostiller, Alexander C.K. Wyman, Ali Moghaddas, and

5  James E. Dochterman, hereby files its Opposition to Defendant Surgery

6  Center Management LLC'S Motion for Return of Property for Attorneys'

7  Fees (Dkt. 1158).

8    This Opposition is based upon the attached memorandum of points

9  and authorities, the files and records in this case, and such further

10  evidence and argument as the Court may permit.

11  Dated: August 17, 2021        Respectfully submitted,

12                               TRACY L. WILKISON
                                 Acting United States Attorney
13
                                 SCOTT M. GARRINGER
14                               Assistant United States Attorney
                                 Chief, Criminal Division
15

16                                    /s/
                                 _____
17                               KRISTEN A. WILLIAMS
                                 CATHY J. OSTILLER
18                               ALEXANDER C.K. WYMAN
                                 ALI MOGHADDAS
19                               JAMES E. DOCHTERMAN
                                 Assistant United States Attorneys
20
                                 Attorneys for Plaintiff
21                               UNITED STATES OF AMERICA

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   STATEMENT OF PERTINENT FACTS.................................2

III.  ARGUMENT....................................................3

      A.    SCM Fails to State a Viable Claim Under
            Monsanto/Unimex Standards..............................3

      B.    Defendant Misstates the Luis Standard and Fails to
            Specify the Basis for Its Challenge....................5

      C.    Defendant's Lack of a Cognizable Interest in the
            Seized Res Renders his Sixth Amendment Argument Moot......7

            1.    Contrary to SCM's Misstatement of the Law of
                  Civil Asset Forfeiture Standing Requirements, A
                  Claimant Must Prove Both Statutory and Article
                  III Standing to Challenge a Seizure, a Burden SCM
                  Demonstrably Cannot Satisfy........................8

            2.    Defendant Lacks Any Cognizable Interest in the
                  Seized Res........................................11

      D.    SCM's Remaining Claims Are Meritless and Should Be
            Rejected..............................................17

IV.   CONCLUSION.................................................18

# **TABLE OF AUTHORITIES**

Cases                                                                    Pages


Caplin & Drysdale, Chartered v. United States,
   491 U.S. 617, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989) .... 6, 8, 16

Kadonsky v. United States,
   216 F.3d 499 (5th Cir. 2000) .................................... 11

Luis v. United States,
   136 S. Ct. 1083, 194 L. Ed. 2d 256 (2016) ........................ 6

Munoz-Valencia v. United States,
   169 F. App'x 150 (3d Cir. 2006) ................................. 11

Nine Million Forty One Thousand Five Hundred Ninety Eight Dollars &
   Sixty Eight Cents),
   163 F.3d 238 (5th Cir. 1998) ................................ 12, 15

United States v. $191,910.00 in U.S. Currency,
   16 F.3d 1051 (9th Cir. 1994) ..................................... 9

United States v. $133,420.00 in U.S. Currency,
   672 F.3d 629 (9th Cir. 2012) .................................. 9, 11

United States v. $38,000.00 Dollars in U.S. Currency,
   816 F.2d 1538 (11th Cir. 1987) ................................. 10

United States v. $225,894 In U.S. Currency,
   852 F. Supp. 2d 578 (D.N.J. 2012) ............................. 11

United States v. $133,420.00 in U.S. Currency,
   No. CV-09-8096-PCT, 2010 WL 2594304, at *5-6 (D. Ariz. June 23,
   2010), aff'd, 672 F.3d 629 (9th Cir. 2012) ...................... 10

United States v. Bonventre,
   720 F.3d 126 (2d Cir. 2013) ..................................... 5

United States v. Lacey,
   378 F. Supp. 3d 814 (D. Ariz. 2019) ........................... 16

United States v. Monsanto,
   491 U.S. 600, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989) .... 1, 5, 16

United States v. One Hundred Thirty-Three (133) U.S. Postal Serv.
   Money Ords. Totaling $127,479.24 In U.S. Currency,
   496 F. App'x 723 (9th Cir. 2012) ............................... 18

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. One Lincoln Navigator 1998,
    328 F.3d 1011 (8th Cir. 2003) ................................... 11

United States v. One-Sixth Share of James J. Bulger In All Present
    And Future Proceeds Of Mass Millions Lottery Ticket No. M246233,
    326 F.3d 36 (1st Cir. 2003) ..................................... 10

United States v. Real Prop. Located at 5208 Los Franciscos Way, Los
    Angeles, Cal.,
    385 F.3d 1187 (9th Cir. 2004) ................................... 12

United States v. Stowell,
    133 U.S. 1, 10 S. Ct. 244, 33 L. Ed. 555 (1890) ................. 16

United States v. Unimex, Inc.,
    991 F.2d 546 (9th Cir. 1993) .................................... 1

Via Mat Int'l S. Am. Ltd. v. United States,
    446 F.3d 1258 (11th Cir. 2006) ................................. 11

Warth v. Seldin,
    422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ........... 11

Statutes

18 U.S.C.A. § 983(d)(6)(B)(i) ...................................... 18

Cal. Ins. Code § 533............................................... 15

PL 106-185......................................................... 9

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3   Following in the footsteps of its co-defendant Julian Omidi

4   ("Omidi"), defendant SURGERY CENTER MANAGEMENT, LLC ("SCM") has filed

5   a motion for return of property, which seeks the release of seized

6   funds in a related civil forfeiture case for its defense in this

7   case.  (Dkt. 1158 ("Motion" or "Mot.").)  In support of its Motion,

8   SCM alleges that it lacks sufficient funds to pay for a criminal

9   legal defense, but, like Omidi, SCM fails to provide a sufficiently

10   specific, nonconjectural accounting of actual assets that are

11   available to SCM as required to justify its request for a

12   <u>Monsanto</u>/<u>Unimex</u> hearing.

13   SCM further demands the release of $10 million from the seized

14   <u>res</u>, property to which it asserts – but does not prove – a cognizable

15   property interest.  SCM alleges that the current inaccessibility of

16   this property (which demonstrably does not belong to SCM) violates

17   SCM's Sixth Amendment rights as well as vaguely stated Fifth

18   Amendment Due Process rights.  However, despite alleging a multitude

19   of property interest theories, ultimately SCM reveals that it has no

20   cognizable interest in the seized <u>res</u>, and no right whatsoever to

21   spend another person's money (no matter the artifice of conveyed

22   interests), for a speculative and aspirational legal defense fund.

23   As the Court recently recognized in response to Omidi's request for

24   release of additional funds from the same seized <u>res</u>, "the seized

25   funds are not a piggy bank" (Dkt. 1190 at 4), and, like Omidi, SCM is

26   not entitled to any portion of the <u>res</u> simply because it cries

27   indigency.  For all the foregoing reasons, SCM's Motion should be

28   denied.

## II.   STATEMENT OF PERTINENT FACTS

The relevant facts related to SCM's Motion are set forth in detail in the government's opposition to co-defendant Omidi's Motion to Dismiss.  (See Dkt. 1052 at 3-16.)  These facts include the pre-indictment seizure of funds pursuant to a finding of probable cause and a seizure warrant issued by former United States Magistrate Judge Victor B. Kenton; the filing of this criminal case; the filing of the civil forfeiture action related to this case (United States v. Approximately $107,539,422.29 in Funds and Securities, CV 18-3855-DMG (the "Funds Case")); the prior unsuccessful or withdrawn motions for return of property filed by co-defendant Omidi in this case and other cases; and the parties' negotiations for a limited return of funds to Omidi's counsel in this case culminating in a stipulation and resulting order in the Funds Case in the fall of 2020.

On June 15, 2021, the Court denied Omidi's motion to dismiss and rejected his claim that the government's 2014 seizure of the funds restrained Omidi's ability to retain counsel of his choice and violated his Sixth Amendment rights.  (Dkt. 1084.)  As part of its Order, the Court ordered the parties to meet and confer regarding Omidi's request for the release of additional funds for his defense. (Id. at 15.)  On July 30, 2021, Omidi filed an ex parte application seeking the release of $8.5 million in funds.  (Dkt. 1150.)  The government opposed that ex parte application (Dkt. 1171), Omidi filed a reply (Dkt. 1182), and the Court took the matter under submission (Dkt. 1151).  The Court denied the ex parte application on August 16, 2021.  (Dkt. 1190.)

While the government was preparing its opposition to the ex parte application, SCM filed the present Motion.  The government

briefly referenced SCM's filing in its opposition to the <u>ex parte</u> application:

> SCM appears to be asking for funds from allegedly "untainted" assets (Dkt. 1158), although the Court has already found that there was probable cause to find that the commingling of any untainted funds with tainted funds, as alleged in the seizure warrant affidavit, rendered the entire res subject to forfeiture. (Dkt. 1084 at 10-12.) Regardless, it is apparent that the $28 million in funds that SCM is seeking are the same funds that OMIDI claims he is entitled to access to obtain the $8.5 million in anticipated legal fees he now seeks and from which he already has received $10 million. (See Dkt. 1038 at 14 (referencing $23-27 million in allegedly "innocent" assets commingled with other funds).) Simple math reveals that there is not enough money there for both OMIDI and SCM to claim.

(Dkt. 1171 at 4 n.1.) The government also noted that "SCM has a similarly weak claim to those funds." (<u>Id.</u> at 5 n.2.)

**III. ARGUMENT**

    **A.   SCM Fails to State a Viable Claim Under <u>Monsanto</u>/<u>Unimex</u> Standards**

    SCM asserts that it is entitled to a <u>Monsanto</u>/<u>Unimex</u> hearing on the grounds that it lacks sufficient financial resources to present a criminal defense and that this impairment is due to the government's seizure of property that allegedly belongs to SCM pursuant to a complex theory of indemnifications and assignments of as-yet-undetermined interests from Property Care Insurance ("PCI"), a <u>Funds Case</u> claimant. (Mot. at 7, 9; Dkt. 1170) In support of its Motion, SCM submitted self-serving declarations from PCI president Cindy Omidi (co-defendant Omidi's mother) (Dkt. 1170) and SCM owner Shawn Pezeshk (Cindy Omidi's brother) (<u>id.</u>) as well as approximately 121 exhibits consisting of previously disclosed discovery (without providing any context for, or explanation of the relevance of, these exhibits).

As stated by this Court, "if a defendant provides <u>sufficient</u> evidence that his Sixth Amendment rights are implicated, <u>i.e.</u> that <u>his or her seized assets</u> are needed to pay for counsel, the Court must hold a hearing to determine whether the release of funds is necessary."[1] (Dkt. 1084 at 5 (internal quotation marks and citation omitted) (emphasis added).)  However, "a [<u>Monsanto</u>/<u>Unimex</u>] hearing is not automatic, . . . and will be held only upon a properly supported motion by Defendant if the moving papers filed, including affidavits, are sufficiently definite, specific, detailed and non-conjectural, to enable the court the court to conclude that a substantial claim is presented." (Dkt. 1084 at 5 (internal quotation marks and citations omitted).)

SCM is incapable of satisfying the <u>Monsanto</u>/<u>Unimex</u> standards because the core basis for its hearing demand is that it "filed affidavits which, <u>if true, tend to show</u> that the entire approximately $109,789,422 seized was not forfeitable." (Mot. at 7 (emphasis added).)  SCM's caveat-laden demand is facially conjectural and vague, violates the <u>Monsanto</u>/<u>Unimex</u> standard, and invalidates SCM's request for return of funds, which, as discussed below, do not belong to it in any event.  The <u>Monsanto</u>/<u>Unimex</u> standard is based on particularity, not volume.  Nowhere in SCM's instant Motion does SCM explain which specific pages of the 121 exhibits it contends support

---

[1] This assumes, of course, that the seized assets actually belong to SCM, which, as discussed more fully below, SCM cannot demonstrate here.  Even if SCM could show that it had a cognizable property interest, the governmental restraint on the seized assets would remain lawful because, as the Court previously recognized, under <u>Monsanto</u>, "the pretrial seizure of a defendant's assets does not violate the Sixth Amendment upon a finding of probable cause, <u>which occurred here</u>." (Dkt. 1084 at 8 (citing <u>Monsanto</u>, 491 U.S. at 615)(emphasis added).)

1    its indigency claim or what assets are demonstrably available for its

2    legal defense.  Like Omidi, SCM's self-serving declarations and lack

3    of a discernible, comprehensible list of accessible assets fails to

4    satisfy the threshold requirements for a Monsanto/Unimex hearing.[2]

5    **B.   Defendant Misstates the _Luis_ Standard and Fails to Specify
          the Basis for Its Challenge**

6

7          As the Court stated, Luis v. United States holds that "[t]he

8    Sixth Amendment guarantees a defendant the right to be represented by

9    an otherwise qualified attorney whom that defendant can afford to

10   hire." (Dkt. 1084 at 5 (quoting Luis v. United States, 136 S. Ct.

11   1083, 1089, 194 L. Ed. 2d 256 (2016) (internal quotation marks and

12   citations omitted) (emphasis added)).  Furthermore, any cognizable

13   right to spend money on counsel is limited to the defendant's "own

14   money." (Dkt. 1084 at 8 (quoting Caplin & Drysdale, Chartered v.

15   United States, 491 U.S. 617, 626, 109 S. Ct. 2646, 105 L. Ed. 2d 528

16   (1989) (internal quotation marks and citation omitted) (emphasis in

17   original)).

18         SCM's Motion is based on the misconception that it has both a

19   right to "counsel of choice" and that this non-existent "right" then

20   "trumps any novel Government procedural claim to the contrary."

21   (Mot. at 13.)  In particular, SCM asserts that it has "no appreciable

22   funds to defend itself" and "lacks the funds to pay anything near the

23   cost of mounting a robust defense."  (Mot. at 3, 7).  To cure its

24   _____

25         [2] See, e.g., Dkt. 1190 at 3 (citing United States v. Bonventre,
     720 F.3d 126, 133 (2d Cir. 2013), and describing decision as
26   "affirming district court denial of Monsanto hearing given that
     defendant had not disclosed his net worth, provided a comprehensive
27   list of his assets, explained how [']he has been paying his
     significant living expenses' and because affidavits describing
28   aggregate bank account balances did not clarify whether defendant
     'has access to other accounts and, if so, their value'")).

5

1  alleged indigence, SCM argues that it is entitled to another entity's

2  property in order to fund either a $4 million (Mot. at 11, 20.) or

3  "minimum" $10 million legal defense (Mot. at 9, 19.), which, while

4  considerably less than co-defendant Omidi's demand (see Dkt. 1150),

5  is still a significant expense.

6      However, SCM grossly misstates the Luis holding and SCM ignores

7  this Court's clearly articulated prior rulings denying co-defendant

8  Omidi's nearly identical arguments.  Specifically, SCM's "counsel of

9  choice" argument is based on the faulty premise that all criminal

10  defendants have the constitutional right to legal representation of

11  their choosing regardless of that legal representative's cost or the

12  defendant's own available resources.  This argument is not supported

13  by the law.  See Luis, 136 S. Ct. at 1089; Caplin & Drysdale, 491

14  U.S. at 626.  Thus, SCM's claimed right does not exist.

15      SCM also neglects to define what particular "novel Government

16  procedural claim" it opposes.  It appears that SCM takes issue with

17  the clearly defined statutory authorities and case law – recognized

18  by this Court (Dkt. 1084 at 5, 7, 8) and cited in the government's

19  previous oppositions to motions for release of funds (see e.g., Dkt.

20  885, 1052, 1063, 1105) – that affirm that the government may seize

21  and withhold from return a defendant's forfeitable property where,

22  among other things, demonstrated probable cause existed for the

23  seizure, and notwithstanding demonstrated probable cause, there exist

24  at law substantive civil remedies to challenge the civil seizure

25  accordingly.  SCM is aware of these available civil remedies and

26  procedures for obtaining them because it, along with other claimants,

27  already availed itself of these civil remedies in the Funds Case and

28  stipulated to staying that case.  (Dkt. 1084, 1145; Funds Case, Dkt.

1  30 (Order re: stay of proceedings), 36 (Order extending stay pending

2  conclusion of criminal case).)  SCM's attempt to circumvent the

3  agreements it made pursuant to its civil claim, by seeking redress in

4  a criminal forum, should be denied.

5       **C.   Defendant's Lack of a Cognizable Interest in the Seized <u>Res</u>
            Renders his Sixth Amendment Argument Moot**

6

7      SCM also asserts that it is in a "different position" than co-

8  defendant Omidi, thus warranting a release of <u>res</u> funds to SCM even

9  though the Court previously denied Omidi's similar demand.  (Mot. at

10 8.)  SCM is correct that it is in a different position from Omidi,

11 but SCM is not in a <u>better</u> position, and as to its lack of a

12 cognizable property interest in the seized <u>res</u>, SCM is in the <u>same</u>

13 position as Omidi – <u>i.e.</u>, neither defendant has a cognizable interest

14 in the seized <u>res</u>, and neither defendant "has the Sixth Amendment

15 right to spend another person's money for services rendered by an

16 attorney, even if those funds are the only way that that defendant

17 will be able to retain the attorney of his choice."  (Dkt. 1145 at 3

18 (quoting <u>Caplin & Drysdale</u>, 491 U.S. at 626 (internal quotation marks

19 omitted).)

20     Like Omidi, SCM "is not an account holder or signatory on any of

21 the accounts that became the seized funds in the Civil Forfeiture

22 Action." (Dkt. 1190 at 3 (describing Omidi's meritless demand for

23 disbursement of funds that did not belong him).)  Unlike Omidi, SCM

24 filed a verified claim in the <u>Funds</u> Case, but only a claim and not an

25 answer.  As discussed below, SCM proposes but fails to prove a

26 variety of possessory and ownership theories that are inherently

27 deficient and will not afford standing necessary to challenge the

28 <u>Funds</u> Case.  (Mot. at 7, 8, 11 .)  Without demonstrable standing, the

1 Court lacks jurisdiction over SCM's claim.  Absent jurisdiction, SCM

2 is incapable of proving a cognizable property interest in the seized

3 res.  And absent that cognizable property interest, SCM is prohibited

4 at law from demanding someone else's money to pay for its desired,

5 but unaffordable, legal defense.

    1.  Contrary to SCM's Misstatement of the Law of Civil
        Asset Forfeiture Standing Requirements, A Claimant
        Must Prove Both Statutory and Article III Standing to
        Challenge a Seizure, a Burden SCM Demonstrably Cannot
        Satisfy

9      SCM misapplies the pre-CAFRA[3] and pre-Rule G[4] holding of United

10 States v. $191,910.00 in United States Currency, 16 F.3d 1051, 1057

11 (9th Cir. 1994), by erroneously asserting that "any kind of interest,

12 including a possessory interest" is sufficient to demonstrate

13 standing as long as the claimant provides "some explanation of it"

14 and appears to assert a third standing theory based on a (non-

15 existent) possessory interest.  (Mot. at 7, fn. 6.)

16      In fact, the primary utility of $191,910.00 is to allow a base

17 claim to the property at the pleading stage – literally any person or

18 entity who wishes to file a claim to seized property may do so as

19 long as that person or entity makes a bare allegation of some sort of

20 possessory or ownership interest, much as SCM has done in this case.[5]

---

22      [3] The Civil Asset Forfeiture Reform Act (CAFRA) of 2000, PL 106-
185, April 25, 2000, 114 Stat 202, 114 Stat. 202 (2000) (codified
23 principally at 18 U.S.C. § 983).

24      [4] The Supplemental Rules for Admiralty or Maritime Claims and
Asset Forfeiture Actions.  See, e.g., United States v. $133,420.00 in
25 United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 635 (9th
Cir. 2012) (generally describing the government's use of Rule G(6) to
26 challenge standing, and strike an invalid claim, thus cutting off an
invalid claimant's access to further pleadings challenging the
27 seizure.)

28      [5] See generally United States v. $133,420.00 in United States v.
$133,420.00 in U.S. Currency, No. CV-09-8096-PCT, 2010 WL 2594304, at
                            *(footnote cont'd on next page)*

8

1  There is no basis in law, however, to support SCM's radical theory

2  that merely claiming a piece of property demonstrates a possessory or

3  ownership interest sufficient for a court to have jurisdiction over

4  the claim, recognize a merely alleged property interest, and then

5  dispose of property to the claimant absent any further confrontation.

6      To be clear, in the Funds Case, the property is the defendant

7  and claimant SCM is an intervenor seeking to challenge the forfeiture

8  action. See United States v. One-Sixth Share of James J. Bulger In

9  All Present And Future Proceeds Of Mass Millions Lottery Ticket No.

10  M246233, 326 F.3d 36, 40 (1st Cir. 2003). As an intervenor, SCM must

11  demonstrate both Article III and statutory standing to establish that

12  it has a sufficient interest in the property to invoke the Court's

13  jurisdiction.[6] Statutory standing means simply that SCM's claim

14  satisfies the requirements of the statute under which forfeiture is

15  sought.

16      A claimant's Article III standing is a threshold issue in every

17  civil forfeiture case.[7] A claimant may demonstrate Article III

---

18  *5–6 (D. Ariz. June 23, 2010), aff'd, 672 F.3d 629 (9th Cir. 2012)

19  (noting that the older cases like $191,910.00 were decided before
Rule G was enacted and do not discuss the principle that proof

20  required to establish standing varies depending on stage of the
proceedings; consequently, $191,910.00 appears to apply only to the

21  pleading stage of the case).

22     [6] See United States v. $38,000 in U.S. Currency, 816 F.2d 1538,
1543 n.12 (11th Cir. 1987) (because a civil forfeiture action is

23  brought against the property in rem, and not against the claimant
personally, the government has no burden of proof until the claimant

24  demonstrates that he has "a legally cognizable interest in the
property that will be injured if the property is forfeited to the

25  government" sufficient to satisfy the case or controversy
requirement).

26     [7] See Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258,
1262 (11th Cir. 2006) (standing is the threshold question in every

27  federal case, determining the power of the court to entertain the
suit (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45

28  L. Ed. 2d 343 (1975)); United States v. One Lincoln Navigator, 328

*(footnote cont'd on next page)*

standing by showing a "colorable interest in the property," which includes "an ownership interest or a possessory interest" in the specific seized property.  United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 637-38 (9th Cir. 2012).[8]  "To meet this requirement, Claimant must present some evidence of his ownership interest."  Id. (citing Kadonsky v. United States, 216 F.3d 499, 508 (5th Cir. 2000)).  However, "[a] bare assertion of ownership in the Seized Funds, without more, is insufficient to establish Article III standing."  Id.

SCM's bare Funds claim, upon which it bases its instant allegation of a cognizable property interest in the seized res and attendant demand for return of funds, is not dissimilar from the many specious claims filed by nominees or third parties seeking to contest the forfeiture in their own names while obfuscating the identity or liability of the true property owner, who does not want to file a claim on his or her own behalf or otherwise wishes to isolate himself or herself from discovery obligations.  Because SCM cannot satisfy its burden to demonstrate standing as an owner (as that term is defined), as a legal matter, there is no "case or controversy," and consequently no basis for the Court to exercise jurisdiction under Article III of the Constitution.[9]  SCM's failure not only undermines

F.3d 1011, 1013 (8th Cir. 2003) ("Article III standing is a threshold question in every federal court case").

[8] See also United States v. $225,894 in U.S. Currency, 852 F. Supp. 2d 578, 580-81 (D.N.J. 2012) (citing Munoz-Valencia v. United States, 169 Fed. Appx. 150, 152 (3d Cir. 2006)).

[9] See United States v. Real Property Located at 5208 Los Franciscos Way, 385 F.3d 1187, 1191 (9th Cir. 2004) (in a civil forfeiture case, claimant's Article III standing "turns upon whether the claimant has a sufficient interest in the property to create a case or controversy"); United States v. $9,041,598.68 (Nine Million Forty One Thousand Five Hundred Ninety Eight Dollars & Sixty Eight

*(footnote cont'd on next page)*

1   its meritless Sixth Amendment argument in the instant criminal

2   matter, but reveals SCM's inability to demonstrate standing in the

3   Funds case, nullifying even an aspirational interest in the seized

4   res.

5               2.   Defendant Lacks Any Cognizable Interest in the Seized
                     Res.

6

7        By SCM's own admission, it lacks standing to challenge the

8   government's Funds Case, a fact that will become even more evident

9   when the Funds Case recommences following the instant criminal

10  proceedings.  SCM asserts in this criminal matter that it has an

11  interest in the seized res based on a "legitimate ownership interest

12  in the funds seized from Property Care Insurance" and a "direct

13  pecuniary interest in the [seized] funds."  (Mot. at 11.)

14       SCM asserts possessory, ownership, and "pecuniary" interests but

15  conflates these multiple theories of civil asset forfeiture standing

16  at the pleading stage in the hopes that by asserting them all,

17  perhaps one of them will "stick" and afford an opportunity to

18  challenge the government's seizure via a criminal forum, which would

19  otherwise be prohibited to SCM in the civil forum.  Regardless of its

20  intent, SCM has actually alleged conflicting theories that, under

21  scrutiny in the Funds Case, create an ownership nullity.

22               *a.   SCM lacks a cognizable possessory interest as an
                      account holder of the seized res.*

23

24       At no point does the record show that SCM was ever in custody or

25  possession of the res seized from PCI, who was the sole signatory on

26

27  Cents), 163 F.3d 238, 245 (5th Cir. 1998) (claimant has burden of
    establishing standing; he must have a "facially colorable interest in
28  the proceedings sufficient to satisfy the case-or-controversy
    requirement").

                                    11

the seized Deutsche Bank accounts (which SCM failed to identify with particularity in its instant Motion).  This puts SCM in the exact same position as Omidi, whose substantially similar application for return of funds was denied, and should again be denied, by this Court because SCM, like Omidi, "is not an account holder or signatory on any of the accounts that became the seized funds in the Civil Forfeiture Action."  (Dkt. 1190 at 3 (describing Omidi's meritless demand for disbursement of funds that did not belong him).)  This fact alone is sufficient to negate SCM's hollow claim to a possessory interest.

> b.   *SCM lacks a cognizable interest based on alleged indemnification or "assigned" interests by PCI.*

SCM further asserts that it has a "pecuniary" interest in the seized <u>res</u> by virtue of PCI's alleged assignment of its property rights in the seized <u>res</u> to SCM, in partial fulfillment of a reserved compliance with a contractual indemnification.  PCI states that "[PCI has] assigned, transferred, and conveyed to [SCM] the right to pursue, receive, and secure funds belonging to Property Care Insurance which are held by the federal government, and we have authorized [SCM] to pursue that assignment, conveyance, and transfer in your name or in the name of Property Care Insurance."  (Dkt. 1170 at 11, Ex. A.).  This statement has the perhaps unintended effect of PCI abandoning its own claim and alleged interest in the seized <u>res</u> and providing a <u>de facto</u> basis for the Court to strike all of PCI's claims in the <u>Funds</u> Case.  That said, SCM offers no clear articulation as to what specific accounts, and specific amounts thereof, it now claims once belonged to PCI, but now belong to SCM.

12

1    SCM's alternative novel "assignment" interest appears to be
2    grounded in an alleged indemnification agreement with PCI.  The
3    substantive terms of the alleged indemnification agreement remain a
4    mystery.  Be that as it may, SCM asserts that on or about April 25,
5    2019, SCM made some sort of claim for defense and indemnification
6    funds from PCI, and on or about May 23, 2019, PCI refused to pay out.
7    (Dkt. 1170 at 10 (Ex. A (PCI's Response to SCM Reservation of Rights
8    Letter, dated May 23, 2019)) ("PCI's Reservation Letter" or "the
9    letter").)  But PCI's Reservation letter never states any reliably
10   determinate outcome upon which SCM might reasonably assert a
11   cognizable interest in the seized res.

12       First, the letter states that SCM's claims related to "[the]
13   willful and intentional portion [of the 17-CR-00661 and 18-CV-3855
14   cases] cannot be indemnified against pursuant to Insurance Code
15   section 533, which prohibits insurance coverage for willful,
16   malicious, intentional, or criminal actions of the insured." (Dkt.
17   1170 at 10 (emphasis added)."  This appears to be an admission from
18   both PCI and SCM that SCM is legally disentitled to PCI's funds (and
19   alleged attendant property interests) for the purpose of funding
20   SCM's criminal legal defense.

21       Second, the letter states that notwithstanding the illegality of
22   SCM's claim for criminal defense funds, PCI admits that the
23   "negligence and unintentional portions of the [same cases] would be
24   covered by the Policy." (Dkt. 1170 at 10.)  Thus, PCI appears

25
26
27
28

1  willing to provide funds to SCM for legal fees related to SCM's

2  involvement in the Funds Case.[10]

3      Third, PCI implies that it may fulfill its alleged contractual

4  obligation via an assignment, transfer, and conveyance to SCM of "the

5  right to pursue, receive, and secure funds belonging to [PCI] held by

6  the federal government."  (Dkt. 1170 at 11.)  PCI asserts that it is

7  not outright denying SCM's claim – only "[reserving] the right to

8  deny the claims based on further developments and new information

9  which may come to our knowledge in the future through our continuing

10  investigation of these matter."  (Id.)

11      As the government understands this letter, PCI appears to admit

12  that insurance payments for criminal defense costs are contrary to

13  law, but PCI might nonetheless consider honoring SCM's claim for fees

14  in the Funds Case at a later point in time.  PCI's admission appears

15  to negate SCM's so-called "pecuniary" interest in the seized res,

16  because if PCI had a cognizable property interest that could be

17  assigned to SCM, PCI would be legally prohibited from conveying that

18  interest to SCM, in fulfillment of an obligation to SCM to pay for

19  criminal defense representation.[11]

20      PCI also cannot convey an alleged interest to SCM for the

21  purpose of funding a criminal legal defense (as SCM demands here),

22  because as regards the criminal action, title in the seized property

23

24

25

26  [10] Notably, neither PCI nor SCM has cited to any evidence of
   PCI's own lack of funds or assets such that the seized res represents
27  the sole property from which it would presumably satisfy SCM's claim,
   and thus is encumbered from complying with the indemnification.

28  [11] PCI itself admits that any such asserted "indemnification"-
   based interest would be illegal under Cal. Ins. Code § 533 (West).

14

is already vested in the <u>government</u>.[12]  PCI's offer to assign its interest to SCM is a non-cognizable artifice because PCI cannot convey to SCM funds to which the <u>government</u> holds title.  Moreover, PCI does not affirmatively grant or deny SCM's claim, and SCM fails to describe the legal mechanism by which PCI can assign an interest to SCM, in fulfillment of an obligation that PCI refuses to assert truly exists.

Therefore, it appears that PCI's Reservation Letter actually demonstrates that:

(1) insurance payments for criminal legal defenses are illegal;

(2) insurance payments for civil legal defenses are legal;

(3) PCI refuses to grant SCM's claim for civil legal defense fees;

(4) PCI chooses to wait and see what happens in the criminal case before making a final claim decision;

(5) absent an actual grant of SCM's claim, PCI will assign its "interest" in the seized <u>res</u> to SCM;

---

[12] "Allowing pretrial restraint of assets is consistent with 'the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture'" to ensure that any "any 'ill-gotten gains' will not dissipate before conviction and protects the community's interest in recovery." (Dkt. 1084 at 5, citing <u>United States v. Lacey</u>, 378 F. Supp. 3d 814, 820 (D. Ariz. 2019) (quoting <u>Caplin & Drysdale, Chartered</u>, 491 U.S. at 627; <u>Monsanto</u>, 491 U.S. at 616)).  <u>See also United States v. Stowell</u>, 133 U.S. 1, 19, 10 S. Ct. 244, 33 L. Ed. 555 (1890) ("As soon as [the possessor of the forfeitable asset committed the violation] . . ., the forfeiture . . . took effect, and (though needing judicial condemnation to perfect it) operated from that time as a statutory conveyance to  the United States of all right, title and interest then remaining in the [possessor]; and was as valid and effectual, against all the world, as a recorded deed").

(6) PCI has no cognizable interest arising out of an insurance obligation to actually pay SCM, because PCI refuses to grant SCM's claim yet;

(7) PCI cannot assign a property interest actually vested in the government, not PCI; and

(8) this transfer of a non-existent property interest is contingent on SCM agreeing not to sue PCI for breach of contract (generally).

SCM fails to describe with particularity what specific interest PCI has transferred given that PCI refuses to affirmatively grant or deny SCM's claims, asserts it might make an indemnification decision at some future moment based on vague conditions, and admits that PCI's interests cannot be legally assigned to pay for SCM's criminal legal defense.  Since the sole purpose of SCM's instant Motion is to demand an extraordinary release of funds, PCI's Reservation of Rights Letter makes the relief SCM seeks virtually impossible.  Simply put, SCM cannot assert a cognizable property interest in the seized res based on the assignment of a speculative property interest intended for contractually illegal purposes.  The absence of a cognizable interest nullifies SCM's Sixth Amendment claim.

At best, SCM's alleged contractual right is only an unsecured interest in PCI's general property and not a secured interest in any particular PCI property.  In other words, SCM might assert that PCI owes SCM "some" money, but SCM cannot assert that it is owed the same money seized by the government, and that fact strikes at the very heart of SCM's claim in the Funds Case.  At bottom, SCM's unsecured interest is not enforceable in civil forfeiture proceedings for any purpose.  See 18 U.S.C.A. § 983(d)(6)(B)(i) (describing threshold

16

requirements for an "innocent owner" defense and noting that a person

with a colorable ownership interest does not include "a person with

only a general unsecured interest in, or claim against, the

property").[13]   Therefore, SCM lacks a cognizable interest to challenge

the Funds Case based on the alleged indemnification, which is at best

a mere unsecured interest or claim against PCI's property.   Lacking a

cognizable interest, SCM's Sixth Amendment argument fails.

### D.   SCM's Remaining Claims Are Meritless and Should Be Rejected.

Finally, SCM makes a number of other claims – e.g., that the

government unlawfully restrained so-called (but unproven) "untainted"

assets; that SCM's Sixth Amendment rights have been violated (also

meritless, as discussed above) and the criminal case should be

dismissed as a result; that the entire seized res is not forfeitable

("if" SCM's affidavits, submitted under penalty of perjury, are

"true"); and that SCM is somehow "aggrieved" by its knowing and

intentional stipulation to stay the civil case.   (Mot. at 7.)   These

allegations merely repeat previously raised arguments by co-defendant

Omidi, which this Court considered and denied at length.   (See Dkt.

1084, 1145, 1190.)[14]

---

[13] See also United States v. One Hundred Thirty-Three (133) United States Postal Service Money Orders Totaling $127,479.24 in United States Currency, 496 Fed. Appx. 723 (9th Cir. 2012) (holding that the holder of a promissory note lacked standing to assert claim, judgment creditor lacked standing to assert claim, and holder of security interest in judgment creditor lacked standing under constructive trust theory to assert claim).

[14] While the government has attempted to address the substance of SCM's primary arguments as they relate to the issues at hand, it is not practical or productive to discuss every flaw in every representation and argument.   The government's decision not to respond to each of SCM's arguments here should not be interpreted as agreement with them.

**IV.   CONCLUSION**

    For all of the foregoing reasons, SCM has failed to make a showing that it is entitled to a return of property or a <u>Monsanto</u>/<u>Unimex</u> hearing.  Therefore, the government respectfully requests that the Court deny SCM's Motion.