Michael S. Devereux  (State Bar No. 225240)
**WEXFORD LAW**
9171 W<small>ILSHIRE</small> B<small>OULEVARD</small>, S<small>UITE</small> 500
B<small>EVERLY</small> H<small>ILLS</small>, C<small>ALIFORNIA</small>  90210
T<small>ELEPHONE</small>: (424) 444-0883

*Attorneys for Defendant*, SURGERY CENTER MANAGEMENT, LLC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>*vs.*<br><br><br>SURGERY CENTER MANAGEMENT, LLC. *et al.*,<br><br><br>*Defendants.* | Case No.: CR 17-661-DMG<br><br>**DEFENDANT SURGERY CENTER MANAGEMENT LLC.'S REPLY TO GOVERNMENT'S OPPOSITION FOR RETURN OF PROPERTY FOR ATTORNEYS' FEES**<br><br>Date:      September 1, 2021<br>Time:     2:30 p.m.<br><br>HON. DOLLY M. GEE |

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

The Defendant Surgery Center Management, LLC ("SCM"), by and through its attorney, Michael S. Devereux, submits this reply in response to the Government's opposition to the Defendant's motion for return of property for attorney fees.

The Government contends that: 1) SMC lacked a cognizable interest in the seized

funds; 2) SCM failed to specify the basis for its challenge; and 3) SCM failed to state a viable claim pursuant to Monsanto/Unimex standards. SCM argues that the government's position is dubious at best. Moreover, the factual basis for the government's reasoning is inaccurate and misleading.

## I.  SCM's Interest to Seized Funds Pursuant to State Law

The question of whether SCM has a legal interest to the funds seized is determined by state law. *See United States v. Ranch Located in Young Arizona* 50 F.3d 630, 632 (9th Cir. 1995; see also *United States v. Yazell* 382 US 341, 352, 353 (1965). In *US v. Lester* 85 F.3d 1409, 1412 (9th Cir. 1996), the issue was whether a third party has an interest in seized property. The Ninth Circuit held that because forfeiture proceedings implicate property rights which have traditionally been measured in terms of state law, it is appropriate to refer to state law. *Id.*

Here it appears that the parties agree that an agreement existed between SCM and Property Care Insurance, LLC (PCI) in that PCI was to indemnify SCM. What the parties don't agree upon is PCI's liability to SCM.

Pursuant to the law of indemnity as defined in California Civil Code §§ 2772-2784.5, while contracting parties may voluntarily define their duties to each other, there are limitations on indemnity agreements. *Lemat Corporation v. American Basketball Association* (1975) 51 Cal.App.3d 287. For example, in California, parties cannot create indemnification agreements for future known unlawful acts, s*ee* CCC § 2773, but can make agreements for past known unlawful acts, with an exception for felonies. *See* CCC § 2774.

Although the government argues incorrectly that insurance payments for criminal legal defenses are illegal, the government refuses or fails to cite to any specific legal authority stating such. It appears that the government is relying upon a layman's opinion, convicted felon Cindy Omidi, in its argument. In fact, the government's reasoning could

not be any further from the law.  Further, it appears the government relies upon Cindy Omidi's interpretation of California Insurance Code § 533.  However, that the insurance code section is inapplicable in this case.

Here, Shawn Pezeshk (Mr. Pezeshk) is an **innocent owner** of SCM. Mr. Pezeshk was not involved in the day-to-day operations of SCM.  Instead, Mr. Pezeshk relied upon Charles Klaskey to operate SCM.   Further, Mr. Pezeshk was not involved in any of the criminal enterprise.  Mr. Pezeshk's position as an innocent owner is of great importance in California property law because Section 533 of the Insurance Code has been held inapplicable to the liability of those who did not participate in unlawful acts.

In *Arenson v. Nat. Automobile & Cas. Ins. Co*. (1955) 45 Cal. 2d 81, an innocent insured who was vicariously liable for the intentional tort of another was held entitled to indemnification on his liability policy, notwithstanding section 533. In addition, in *Nuffer v. Insurance Co. of North America* (1965) 236 Cal. App. 2d 349, 356, involving fire, where a building was destroyed by arson of the agent of its owner, the court refused to apply section 533.  Here, SCM's alleged unlawful conduct was through Charles Klaskey, an agent of SCM's owner and not Mr. Pezeshk himself.  Therefore, in the instant case, Cindy Omidi's interpretation of Section 533 would not apply.

In addition, a felony exception to § 2774 would not apply.  It makes no difference whether this Court takes judicial notice of the findings in the first superseding indictment because even if it does, those findings would not suffice to establish SCM's conduct was felonious since SCM has not been convicted of any felony or sentenced to any felony.

Accordingly, pursuant to federal and state law, SCM without a doubt has an interest in the millions of dollars that were paid to PCI to indemnify its legal defense. Moreover, there is currently no felony exception to SCM's interests.

## II.   SCM's Federal Rights in Criminal Forfeiture

Criminal forfeiture may leave a wide range of stakeholders, vulnerable to financial loss.  Unlike civil forfeitures, parties other than the defendant committing the crime has

multiple interests in criminally forfeited property.

First, in accordance with 21 U.S.C. §853(n)(6)(a), any person (other than the defendant committing the crime) may petition for recovery if it establishes, by a preponderance of the evidence, that it has a legal right, title, or interest in the property that invalidates the order of forfeiture because (i) this right vested in the petitioning party before vesting in the defendant, or (ii) this right was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. *See* 21 U.S.C. §853(n)(6)(A).

Alternatively, even if a petitioning party's interest did not vest prior to the interest of the defendant, §853(n)(6)(b) provides that a party may petition for recovery if it establishes, by a preponderance of the evidence, that it is a "bona fide purchaser for value of the right, title, or interest in the property" and that, at the time of purchase, such party was "reasonably without cause to believe that the property was subject to forfeiture."

Notably, in the context of criminal forfeiture, "property" is broadly defined to include both real property and tangible and intangible personal property, including rights, privileges, interests, claims, and securities. *See* 21 U.S.C. §853(b).

Thus under this approach, SCM is a bona fide purchaser for value of an indemnity policy, therefore, should be able to recover some or all of its financial interest in the seized property. *See* 21 U.S.C §853(n)(6).

**III.   If SCM Was Never in Possession of Res, Then Why Is It Being Prosecuted**

The government's contention that SCM was never in custody or possession of the res seized from PCI is dubious at best and may be considered double-dealing.

The structure of the operation was that SCM would file the approvals pre-surgery, would file the claims post-surgery and would receive the insurance monies from the insurance agencies before distributing the monies to the various related entities. One of the entities was PCI, the organization was created to indemnify SCM, et al.

If the government's contention is valid, then what is the reason SCM is being

prosecuted. Apparently pursuant to the government's argument, SCM was never in custody or possession of any of the res. Accordingly, SCM should have no criminal liability.

## IV. The Government's Position that SCM Misstates *Luis* Is Without Merit

The Government's position that SCM's motion is based upon the *misconception* that SCM has a right to "**counsel of choice**" is <u>inaccurate, misleading and disingenuous</u>. At the very least, the government should have read the *Luis* decision before they argued it.

The slip opinion states in its summary on the very first page, "JUSTICE BREYER, joined by THE CHIEF JUSTICE, JUSTICE GINSBURG, and JUSTICE SOTOMAYOR, concluded that the pretrial restraint of legitimate, untainted assets needed to retain **counsel of choice** violates the Sixth Amendment." In addition, in the very next paragraph on the first page the slip opinion states, "[t]he Sixth Amendment right to counsel grants a defendant 'a fair opportunity to secure **counsel of his own choice**,' Powell v. Alabama, 287 U. S. 45, 53, that he 'can afford to hire,' Caplin & Drysdale, Chartered v. United States, 491 U. S. 617, 624.

## V. SCM Is No Longer In Business, Thus Has No Revenue

As stated in its motion, Counsel is working with bare bones. If SCM was not a corporation, it would qualify for CJA funds. It has no revenue. SCM has in practicality shut the business down. It no longer operates.

As Counsel previously stated, monthly payments are always late and never covers more than 9 hours. On this budget, Counsel would be gone by noon of the first day of the month throughout trial until the following month.

In addition, there are no funds for experts. There are no funds to interview witnesses. There are no funds to serve subpoenae. There are no funds for Counsel to appear at trial.

Apparently, the government is experiencing difficulty understanding the concept that a corporation that is no longer in business has no revenue, thus no funds, but that is

the current financial situation of SCM.

## VI. The Untainted Funds

Apparently, there is some confusion to the untainted funds. If so, then SCM apologizes to the Court and hopefully will clarify any misunderstandings.

After speaking to other attorneys, experts, investigators and support staff, Counsel believes that it would need no more than $4 million for a trial that is expected to last 90 days. SCM is not requesting the entire approximate amount of $139,000,000 seized. However, pursuant to the documents filed under seal in dkt# 1039, SCM believes that just under $28,000,000 of untainted that are well documented with accompanying exhibits and declarations.

As stated in SCM's motion, SCM is including previously filed documents and pleadings, including but not limited to dkt #1039.

## VII. CONCLUSION

For the reasons stated in the motion and this reply, SCM respectfully requests that this Court dismiss this case in its entirety or in the alternative release funds for SCM to conduct its defense.

Dated: August 23, 2021            Respectfully submitted,
                                  WEXFORD LAW,


                                  *Michael Devereux*
                                  Michael S. Devereux
                                  Attorney for Defendant
                                  SURGERY CENTER MANAGEMENT