UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES—GENERAL

Page **1** of 4

| Case No. | CR 17-661-DMG | Date | September 1, 2021 |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | N/A |

| Kane Tien | Not Reported | Not Present |
|---|---|---|
| Deputy Clerk | Court Reporter | Assistant U.S. Attorney |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendant(s): | Present | Appt. | Ret. |
|---|---|---|---|---|---|---|---|
| Surgery Center Management, LLC | Not | | | Michael Devereux | Not | | ✓ |

**Proceedings:** **[IN CHAMBERS]** – **ORDER RE DEFENDANT SURGERY CENTER MANAGEMENT, LLC'S MOTION FOR RETURN OF SEIZED PROPERTY [1158]**

## I.    INTRODUCTION

On August 3, 2021, Defendant Surgery Center Management, LLC ("SCM") filed a motion for the return of seized property, seeking some of the seized funds in the civil forfeiture action, *United States v. Approximately $107,539,422.29 in Funds and Securities*, CV 18-3855-DMG (Ex) ("Civil Forfeiture Action"), to pay its defense costs in the upcoming trial in this criminal proceeding, scheduled to begin on September 21, 2021.  [Doc. ## 1158, 1184[1].]  On August 17, 2021, the Government filed its opposition [Doc. # 1238], and on August 23, 2021, SCM filed its reply [Doc. # 1259].  A videoconference hearing was held on September 1, 2021.  Having carefully considered the arguments set forth in the parties' briefs, the Court **DENIES** SCM's motion.

## II.    BACKGROUND

As set forth in the Court's June 15, 2021 Order denying Defendant Julian Omidi's motion to dismiss the Indictment and for the release of seized funds [Doc. # 1084] ("June 15 Order"), between May and June 2014, in relation to their GET THIN investigation, the Government applied for, and was granted, two warrants to seize approximately $127 million from several accounts held by GET THIN affiliated entities (collectively, "Seized Funds") . The first seizure warrant, issued on May 23, 2014 by Hon. Victor B. Kenton, former United States Magistrate Judge, authorized seizure of the contents of 12 accounts at Deutsche Bank Securities:  three accounts held by Property Care Insurance, Inc. ("PCI"),

---

[1] On August 4, 2021, SCM filed an *ex parte* application seeking to file corrected declarations (of Cindy Omidi and Shawn Pezeshk in support of its motion for return of property), and to file a compendium of supporting exhibits (Exhibits 1-121) under seal.  [Doc. # 1170.]   Following an Order to Show Cause [Doc. # 1173], the Court discharged the OSC, provisionally granted SCM's application to file Exhibits 1-121 under seal, and granted SCM's request to disregard a declaration and exhibit attached to its initial motion [Doc. # 1158-1, 1158-2] and instead accept the Declaration of Cindy Omidi and Declaration of Shawn Pezeshk as the proper exhibits to the Motion.  [Doc. # 1183.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page **2** of **4**

and nine accounts held by Asset Management Irrevocable Trusts (Asiatrust Nevis Limited, trustee) ("Trustee"), totaling over $109 million in funds and securities. [*See* Doc. # 1052-1, Exh. A.] The second seizure warrant, issued on June 24, 2014 by Magistrate Judge Kenton, authorized seizure of the contents of two Bank of America accounts, both held by PCI, totaling over $17 million. [*See id.*, Exh. B.]

### III. LEGAL STANDARD

As set forth in the June 15 Order, "[t]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." *Luis v. United States*, 136 S.Ct. 1083, 1089 (2016) (*quoting Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). The right to counsel of choice, however, is not absolute. For example, "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Caplin & Drysdale*, 491 U.S. at 626. The pretrial restraint of assets "in a defendant's possession[,]" even if needed to pay for that defendant's legal defense, is permissible if it is "based on a finding of probable cause to believe that the assets are forfeitable." *United States v. Monsanto*, 491 U.S. 600, 615 (1989) (emphasis added); *see also Kaley v. United States*, 571 U.S. 320, 327 (2014) ("With probable cause, a freeze is valid."). "Allowing pretrial restraint of assets is consistent with 'the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture'" to ensure that any "any 'ill-gotten gains' will not dissipate before conviction and protects the community's interest in recovery." *United States v. Lacey*, 378 F. Supp. 3d 814, 820 (D. Ariz. 2019) (*quoting Caplin*, 491 U.S. at 627; *Monsanto*, 491 U.S. at 616).

If a defendant provides sufficient evidence that its Sixth Amendment rights are implicated, i.e., that its seized assets are needed to pay for counsel, "the Court must hold a hearing to determine whether the release of funds is necessary." *Matter of Seizure of Any & All Funds Held in Republic Bank of Arizona Accounts*, No. CV 18-6742-RGK (PJWx), 2019 WL 8892585, at *8 (C.D. Cal. Dec. 20, 2019), *appeal dismissed sub nom.*, 817 F. App'x 483 (9th Cir. 2020) (*citing United States v. Unimex*, 991 F.2d 546, 551 (9th Cir. 1993)). A so-called *Unimex/Monsanto* hearing takes place if a defendant makes a threshold showing that it lacks other funds or access to other funds for its defense. *See United States v. Bonventre*, 720 F.3d 126, 128, 133 (2d Cir. 2013).

### IV. DISCUSSION

Defendant SCM's motion seeking the release of seized funds in the Civil Forfeiture Action to pay its defense costs in this criminal proceeding fails for many of the same reasons that Defendant Omidi's motion seeking the release of seized funds already failed. [*See* Doc. # 1086.] First, like Defendant Omidi, Defendant SCM has not established a Sixth Amendment right to any of the Seized Funds, given that it is admittedly not an account holder or signatory on any of the accounts that became part of the Seized Funds. *See id.* at 8 (*quoting Caplin & Drysdale*, 491 U.S. at 626 (Sixth Amendment right to counsel of choice does not extend beyond "the individual's right to spend *his own money* to obtain the advice and assistance of . . . counsel.") (emphasis added); *Monsanto*, 491 U.S. at 615 ("Assets *in a defendant's possession* may be restrained in the way they were here [pretrial] based on a finding of probable cause to believe that the assets are forfeitable.") (emphasis added); *Luis*, 136 S.Ct. at 1088

(Sixth Amendment violation occurred where government's pretrial seizure prevented defendant from "using *her own* untainted funds" to retain counsel of choice) (emphasis added).

SCM is in a slightly different position than Defendant Omidi, given that SCM did file a claim in the Civil Forfeiture Action, and it asserts an indirect possessory interest in a portion of the Seized Funds. SCM claims that it previously paid approximately $4 million in insurance premiums to PCI, and that PCI provided a reservation of rights letter dated May 23, 2019 indicating, among other things, that PCI "ha[s] assigned, transferred, and conveyed to [SCM] the right to pursue, receive, and secure funds belonging to Property Care Insurance which are held by the federal government, and [PCI has] authorized [SCM] to pursue that assignment, conveyance, and transfer in [SCM's] name or in the name of Property Care Insurance." [Doc. # 1170, Exh. A (Reservation of Rights Letter) at 11[2].][3] SCM's argument does not survive the blush test. It is unclear from the evidence submitted what specific amounts once belonging to PCI now allegedly belong to SCM, and to the extent SCM appears to claim that it is entitled to obtain $4 million insurance premium payments once paid to PCI out of the Seized Funds, SCM has not submitted any plausible evidence supporting its contention. The fact that SCM may have paid insurance premiums during an unknown period of time for some undisclosed policy of insurance covering who knows what does not entitle it to recover its insurance premiums from PCI. SCM points to no insurance policy language that would entitle it to coverage in a criminal prosecution – nor could it given that no legitimate insurer would cover wilful acts of an insured. *See* Cal. Ins. Code § 533 ("An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."). And while Cindy Omidi's convenient Reservation of Rights Letter acknowledges as much, her letter purporting to offer a defense for "the negligence or unintentional portions" begs the question of what "negligent" or "unintentional" acts could possibly be asserted in this *criminal* prosecution or in the Civil Forfeiture Action.

Even assuming the information in the Reservation of Rights Letter were accurate, SCM has not established that PCI lacks any other funds (apart from the Seized Funds) which it could provide to SCM or that other sources of funding are unavailable.[4] In short, the argument that the insurer-insured relationship between PCI and SCM gives SCM an interest in the Seized Funds is dubious at best. SCM

---

[2] Page references herein refer to the page numbers inserted by the CM/ECF system.

[3] The Government points out that "[t]his statement has the perhaps unintended effect of PCI abandoning its own claim and alleged interest in the seized *res* and providing a *de facto* basis for the Court to strike all of PCI's claims in the Funds Case." [Doc. # 1238 at 17.] The Court is not being asked to resolve this issue in the instant motion and finds that resolution of any claims as to the Seized Funds is better left for the Civil Forfeiture Action, which has been stayed pending the conclusion of this criminal proceeding.

[4] The Court notes that, before Mr. Devereux became SCM's counsel, George Paukert, SCM'S prior counsel, sought to withdraw as counsel due to non-payment of attorneys' fees. [Doc. # 401.] When the Court denied the request to withdraw and ordered SCM's owner, Shawn Pezeshk, to appear to show cause why he should not be required to pay for counsel's services, the attorneys' fees issue was suddenly resolved. [*See* Doc. ## 406, 449, 457, 465, 478, 479, 504, 505.] The Order to Show Cause was later vacated upon Mr. Paukert's representation that his client had provided him with recent payment in partial satisfaction of past attorneys' fees owed and assurances of future cooperation and communication. [Doc. # 505.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page  4 of 4

fails to show that it has an interest in the Seized Funds and that the release of $4 (or $10) million[5] from the Seized Funds is warranted to pay for SCM's legal defense costs in this action.

Moreover, even assuming *arguendo* that SCM could establish that its Sixth Amendment right to counsel were implicated by the Seized Funds (which it has not), SCM has also failed to make a threshold showing entitling it to a *Unimex/Monsanto* hearing. SCM's submitted evidence is insufficient to establish that it lacks funds or access to funds for its defense. Cindy Omidi (Defendant Omidi's mother and PCI's owner) has submitted a declaration stating that PCI has no funds to pay for SCM's defense because its assets were seized by the Government. C. Omidi Decl. ¶ 3. She acknowledges that (following the seizure of PCI's funds that gave rise to the Civil Forfeiture Action) she has been paying $7,000 per month for SCM's legal defense fees, but at this point, she simply "no longer ha[s] the interest or willingness" to continue doing so.[6] *Id.* ¶ 5. Shawn Pezeshk, SCM's sole owner (and Defendant Omidi's uncle and Cindy Omidi's brother) attests in a sparsely worded declaration that SCM has no other assets (apart from the aforementioned funds provided by Cindy Omidi) with which it can defend itself at trial. Pezeshk Decl. ¶ 5. Mr. Pezeshk does not provide, however, an accounting or any further information regarding SCM's assets, net worth, or his own assets or net worth, to assist the Court in determining whether SCM lacks funds or access to funds to defend itself at trial. *See Bonventre*, 720 F.3d at 133 (affirming district court denial of *Monsanto* hearing given that defendant had not disclosed his net worth, provided a comprehensive list of his assets, explained how he has been paying his significant living expenses" and because affidavits describing aggregate bank account balances did not clarify whether defendant "has access to other accounts and, if so, their value.").

## V.   CONCLUSION

For the foregoing reasons, SCM's motion for the return of seized property is **DENIED**. The Court provisionally granted SCM's blanket request to seal Exhibits 1-121 in support of its motion (consisting of over 2,600 pages of documents) [*see* Doc. ## 1183, 1184], but SCM has not provided any clear argument or context for this inexplicable document dump or how they support its motion, nor has the Court found any. Unless SCM can justify sealing *each* of these documents under the applicable legal standard by **September 13, 2021**, the Court will proceed to unseal the exhibits. *See Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016); *see also United States v. Big Leggins,* 375 F. App'x 692, 692 (9th Cir. 2010) (applying standard set forth in *Kamakana v. City & Cnty. Of Honolulu,* 447 F.3d 1172 (9th Cir. 2006), regarding sealing documents in a criminal case). Alternatively, **by September 10, 2021**, SCM may notify the Court that it withdraws Exhibits 1-121.

**IT IS SO ORDERED.**

---

[5] SCM claims that it paid PCI $4 million in insurance premiums [Doc. # 1170 (C. Omidi Decl.) ¶ 3], and that it should receive at least that amount out of the Seized Funds, which also approximates its defense costs for trial. [Doc. ## 1158 at 11; # 1259 at 6.] Elsewhere, SCM claims that it should receive $10 million because Defendant Omidi received $10 million in the stipulated release between the Government and Omidi. [Doc. # 1158 at 13.]

[6] Ms. Omidi, not very coincidentally, filed a similar declaration in support of her son Defendant Julian Omidi's quest for an $8.5 million infusion from the Seized Funds, in which she claimed she no longer wished to provide financial support for her son for "personal reasons." [Doc. # 1150-1 (C. Omidi Decl.) ¶ 8.]