ELON BERK, ESQ. (SBN 209642)
GUROVICH, BERK & ASSOC.
15250 Ventura Blvd., Suite 1220
Sherman Oaks, CA 91403
Tel: 818-205-1555
Email: eberk@crimlawla.com

Attorneys for Defendant,
Surgery Center Management, LLC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>　vs.<br><br>SURGERY CENTER MANAGEMENT,<br>et. al.<br>　　　　Defendants. | Case No. 17 CR 00661-DMG<br><br>[*Hon. Dolly M. Gee, District Court Judge*]<br><br>**SURGERY CENTER MANAGEMENT'S JOINDER TO MR. OMIDI'S MOTION TO COMPEL; POINTS AND AUTHORITIES**<br><br>Dept.:　　Courtroom 8C<br>Location:　350 West 1st Street, 8th Floor<br>　　　　　Los Angeles, CA 90012<br>Date:　　March 23, 2022 at 2:30 pm |

Defendant Surgery Center Management, LLC. ("SCM"), respectfully submits this joinder to Defendant Julian Omidi's motion to compel (ECF 1660).

### A. The Government Participated in the Presentation of False Testimony

Based on the current available discovery, Government witness Charles Klasky, during his initial proffer session on May 24, 2016 at 10 am, reported that Mr. Julian Omidi's purported agent, Brian Oxman, had made a call threatening Mr. Klasky <u>earlier that same morning prior to the proffer</u>. The alleged nature of the threat was a "Gun to Your Head" death threat phone call to Mr. Klasky to silence him and prevent him from attending the proffer with U.S. Attorney's Office that same morning. Mr. Klasky reported Mr. Oxman told him, in Mr. Omidi's immediate presence, that meeting with the Government would be akin to "putting a gun to your head," "to keep his mouth shut, and to not tell the truth or his (KLASKY's) life would be over." (Omidi Motion to Compel, Ex. 2 at 12-13, GT_ REPORTS_ 00097367-68.) Since on May 24, 2016 Mr. Klasky reported that the threat call from Mr. Oxman (the "Threat") occurred *earlier that same morning* before the 10 am proffer, within minutes to a couple of hours before, it is facially incredible for the Government to claim in its Opposition there was potentially a mistake as to the May 24 date of the alleged Threat.

Despite investigating Mr. Klasky's inflammatory May 24, 2016 Report and determining the Report was false (specifically that Mr. Oxman called to threaten him on the morning of the same day as the May 24, 2016 Proffer), the Government did not disclose the reports of its investigation to SCM until two months after the trial on February 16, 2022. It is undisputed that on May 25, 2016, the day following Mr. Klasky's May 24, 2016 Report of the Threat, AUSA Williams signed a subpoena for Mr. Klasky's phone records, apparently to investigate and assess the veracity of Mr. Klasky's Report. (Omidi Motion to Compel, Ex. 3, GT- Verizon – 00000532.) The record is also undisputed that the Government investigated the subscriber information of the subpoenaed phone records which showed no telephone call on May 24, 2016 between Oxman and Klasky, but withheld from Defendants the results of its investigation. (Omidi

Motion to Compel Ex's. 9-10.) The Government also withheld FDA Agent Samanta Kelley's January 13, 2017 Spreadsheet analysis of the aforementioned relevant facts (Omidi Motion to Compel Ex. 7) that compiled its investigation results, which Agent Kelley emailed to all members of the prosecution and investigation team on the same date. (Omidi Motion to Compel Ex's. 6, 8.)

The Kelley Spreadsheet documented **Mr. Klasky's May 24, 2016 claim that Mr. Oxman called and threatened him with the "Gun to Your Head" Call earlier on the same morning of May 24** (Omidi Motion to Compel Ex.7 at 2). At the same time, the Kelley Spreadsheet documented that **there were no calls from Mr. Oxman or Mr. Omidi on May 24, 2016** (either directly or through an intermediary). The **Kelley Spreadsheet proved Mr. Klasky's Report of the "Gun to Your Head" death threat Call** (on the Morning of May 24, 2016) **was false,** and every member of the prosecution team knew this fact no later than January 13, 2017. It is important to note that the Government, prior to Mr. Klasky's Grand Jury testimony, asked Mr. Klasky to confirm the date and time of the alleged Threat, which Mr. Klasky reconfirmed was on the morning of May 24, 2016.

The veracity of Mr. Klasky's claim was crucial to the Government for several apparent reasons. First, such a threat to the Government's main witness to silence him as he is on his way to go into the U.S. Attorney's Office to purportedly expose the truth is, by itself, a serious crime that should be, and as the post-trial discovery shows, and was investigated. Second, if a threat did in fact occur, the threat itself would lend credibility to Mr. Klasky's prospective testimony. Conversely, if threat was false, it would be damage Mr. Klasky's credibility. As it turned out, the investigation results and the January 13, 2017 Kelley Spreadsheet proved Mr. Klasky's repeated assertion that he was threatened on the Morning of May 24 was false. Third, despite its own investigation proving Mr. Klasky's Report of the "Gun to Your Head" Call was false, the Government emphasized the purported death threat in its closing and rebuttal as evidence of Defendants' consciousness of guilt. Nevertheless, the Government did not disclose its investigation

results and the January 13, 2017 Kelley Spreadsheet until two months after trial on February 16, 2022 in violation of *Brady v. Maryland,* 376 U.S. 83 (1963). And in violation of *Napue v. Illinois*, 360 U.S. 264 (1959) the Government elicited the perjured "Gun to Your Head" Call in front of the Grand Jury and Trial, it knew to be controverted.

### B. The Government's Creation of an Alternative Reality is Without Merit

The overwhelming evidence in the record documents Mr. Klasky's repeated assertion that the "Gun to Your Head" Call occurred on May 24, 2016, just before his proffer meeting that same morning. (Omidi Reply at 1-5.) Despite this undeniable evidence, the Government misrepresents the record in its Opposition claiming without support that its own agent, FBI Special Agent Mark Coleman, not Mr. Klasky, may have had the date wrong as to the purported Call in his May 24, 2016 written report. "But it is decidedly improper for the government to propound inferences that it knows to be false, or has very strong reason to doubt, particularly when it refuses to acknowledge the error afterwards to [] the trial court … and instead offers far-fetched explanations of its actions." *United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002).

Because the Government's investigation results and the January 13, 2017 Kelley Spreadsheet proved Mr. Klasky perjured himself and falsely alleged a threat on his life if he was to proffer and testify, the Government knew that Mr. Klasky's credibility as a witness was gravely undermined. The purpose of the first proffer meeting on May 24, 2016 between the Government and Mr. Klasky was to determine if Mr. Klasky was credible so that the Government could provide him with a plea agreement. The Government determined no later than January 13, 2017 that Mr. Klasky was not credible and had falsified the "Gun to Your Head" death threat Call implicating Mr. Oxman and Mr. Omidi at the May 24, 2016 proffer. That proffer, as all proffers, was under penalty of perjury and obstruction of justice. Yet, rather than prosecuting him or removing him as a witness because he was proven a perjurer, the Government instead rewarded Mr. Klasky's perjury with a favorable plea agreement five (5) months later.

At trial, during its redirect examination of Mr. Klasky, the Government capitalized on the misbegotten plea agreement, using it to rehabilitate and bolster Mr. Klasky's credibility by asserting Mr. Klasky did not lie because otherwise the Government would revoke his plea agreement. (Tr. 6057-58.) However, the Government materially did not disclose it had provided Mr. Klasky the plea agreement despite its own investigation results proving Mr. Klasky committed perjury months before the plea agreement. This record shows the Government again knowingly elicited a testimony from Mr. Klatsky as to the alleged threat, but carefully maneuvered around his many prior statements that such a threat occurred on the morning of May 24, 2016. Mr. Klasky's clear lie was apparently not a problem for the Government if it could still use Mr. Klasky's testimony to convict the Defendants so long as the Defense did not have the proper tools to cross examine Mr. Klatsky as to the alleged threat.

### C. The Government Did Not Disclose It Knew the Testimony was False

On August 9, 2017, the Government presented Mr. Klasky's plea agreement to Hon. Judge Dolly Gee at Mr. Klasky's plea hearing. The Government distorted the fact-finding process by failing to disclose to the Court the Government's investigation results and the January 13, 2017 Kelley Spreadsheet proving Mr. Klasky had provided a perjured Report implicating Mr. Oxman and Mr. Omidi in the purported death threat Call on the morning of May 24, 2016. Without knowledge of the true facts, the Court accepted Mr. Klasky's plea.

For the period between January 13, 2017 and the August 9, 2017 plea hearing, the Government has not produced a single email, investigative report, correspondence, telephone call, meeting minute, or memorandum which discussed the fact that the investigation showed Mr. Klasky filed a false Report on May 24, 2016. It is inherently unbelievable that the ten (10) Government agents and prosecutors who received the investigation reports and the January 13, 2017 Kelley affidavit, along with Agent Kelley herself, said nothing about Mr. Klasky having made the false Report. This silence in the

4
SCM'S JOINDER TO MR. OMIDI'S MOTION TO COMPEL

discovery demonstrates why full disclosure and an evidentiary hearing are needed. *United States v. Bernal-Obeso*, 989 F.2d 331, 336 (9th Cir. 1993) ("[W]e will not assume an innocent explanation from a silent record. The appropriate step is to vacate the defendant's conviction and remand to the district court for an evidentiary hearing to determine what happened and why.")

On August 14, 2017, only 5 days after his Change of Plea Hearing, Mr. Klasky again repeated that the "'gun to your head' call was in the morning" of May 24, "right before [the] 10 AM meet[ing]." (Omidi Motion to Compel Ex. 11 at 15, GT_ REPORTS_0.0104958.) The Government *knew* this was false and constituted perjury and obstruction of justice in violation of Mr. Klasky's plea agreement. Nevertheless, the Government did nothing and participated in Mr. Klasky's charade.

### D. The Government Did Not Confront Mr. Klasky with his Falsity

On August 14, 2017, the Government then showed Mr. Klasky his phone records from May 24, 2016. (Omidi Motion to Compel Ex. 11 at 15, GT_ REPORTS 0.0104958.) Mr. Klasky continued to insist that the "Gun to Your Head" Call was on May 24, 2016, and claimed the 310 call originating from Santa Ana was from Mr. Oxman. *Id*. However, the Government *knew* Mr. Klasky's claim regarding the 310 number was false from its exhaustive investigation which revealed that the 310 number actually belonged to Cheryl Ann Nichols who had no relationship to Mr. Oxman or Mr. Omidi. The Government admitted this fact that there was no relationship in its opposition. Still, the record shows the Government did not confront Mr. Klasky with his obvious perjury, and instead turned a blind eye to it, permitting it to infiltrate the entirety of this case.

Thereafter, at the same August 14, 2017 interview, the Government asked Mr. Klasky about the names of the only two incoming callers to Mr. Klasky on the morning May 24, 2016 before his proffer (Cheryl Nichols and Sevan Shahnazari, misspelled phonetically on the August 17, 2017 report). *Id*. In response, Mr. Klasky responded "no recollection [but] knows someone named Savan." *Id*. These names were not raised by the

Government by coincidence. The record shows the only way the Government came up with the names of Cheryl Nichols and Sevan Shahnazari was from its investigation reports and January 13, 2017 Kelley Spreadsheet. (Omidi Motion to Compel Ex's 7, 9-10.) The Declaration of AUSA Williams' stating she "was not able to determine that [the Kelley Spreadsheet and underlying investigation reports] were used in connection with the August 14, 2017 Klasky interview" (Williams Decl. at ¶9), cannot be reconciled with this record. *Blueford*, 312 F.3d 962, 968. The Government obviously used the results from its investigation reports and January 13, 2017 Kelley Spreadsheet at the August 14, 2017 interview with Mr. Klasky, but withheld these material documents from the Defendants.

Despite the fact that Mr. Klasky's phone records show Mr. Klasky had made and received repeated calls from the numbers corresponding to Cheryl Nichols and Sevan Shahnazari, the discovery shows the Government never confronted Mr. Klasky with this fact nor did it investigate the relationship of these callers with Mr. Klasky. Instead, the Government presented Mr. Klasky's false and perjured testimony against Defendants to the Grand Jury and at Trial. Full disclosure and an evidentiary hearing are, therefore, required.

### E. Full Discovery of Klasky's Material Change of Testimony is Essential

On August 16, 2017, for the first time, Mr. Klasky changed his story in front of the grand jury and now claimed the gun to the head Call occurred "late afternoon" the day before the May 24, 2016 proffer, *i.e.*, on May 23, 2016.[1] (Omidi Motion to Compel Ex. 12, GJ TRANSCRIPTS 0005624-5.) Mr. Klasky further embellished his story and stated for the first time he could hear Mr. Omidi in the background of this call directing Mr. Oxman, whereas in his original story recounted on the same day of the purported Threat

---

[1] The phone records clearly show there was no late afternoon phone call from Mr. Oxman on May 23, 2016. Further, on August 14, 2017, Mr. Klasky said the "night call" on May 23, 2016, which corresponds to an 8:31 pm call on the phone records, was not the "Gun to Your Head" Call. *Id*. These facts emphasize why full discovery is essential because the government *knew* the testimony was false.

he said he could not hear Mr. Omidi. *Id*.

In front of the Grand Jury, the Government never asked Mr. Klasky why he gave the new altered story when two (2) days before, at his August 14, 2017 interview, Mr. Klasky was adamant the "Gun to Your Head" Call occurred on May 24, 2016 and that he could not say if Mr. Omidi was there for that call. The Government permitted Mr. Klasky to change, without explanation, the date of the purported "Gun to Your Head" Call in order to avoid the obvious falsity of his original story, which the Government *knew* never occurred and was false, and with which Mr. Klasky was confronted just two days before on August 14, 2016. Yet, the Government withheld from the Grand Jury "evidence of evolution over time of [Mr. Klasky's] description [which was] fatal to its reliability." *Kyles v. Whitley,* 514 U.S. 419, 444 (1995).

Along with the stain on Mr. Klasky's reliability, the Government withheld from the Grand Jury the Government's investigation results showing Mr. Klasky's "Gun to Your Head" Call story was false. "Whenever the prosecutor learns of any perjury committed before the grand jury, he is under a duty to immediately inform the court and opposing counsel— and, if the perjury may be material, also the grand jury— in order that appropriate action may be taken." *United States v. Basurto*, 497 F.2d 781, 785–86 (9th Cir. 1974). Thus, the Government failed in its duty.

It is inherently unbelievable the Government ignored what should have been an obvious change of Mr. Klasky's testimony in front of the Grand Jury. Further, the Government never provided discovery showing discussions, emails, notes, or memoranda concerning the material change in testimony. There is no record of the Government asking Mr. Klasky or his lawyers a single question of why Mr. Klasky changed his testimony. There is no record of the Government asking Mr. Klasky for details pertaining to his new testimony in front of the Grand Jury. There is no record of any investigation of or inquiry into his changed testimony, which should have caused great concern. Full discovery and an evidentiary hearing are mandatory to uncover the Government's participation in presenting false testimony to the Grand Jury against the Defendants.

### F. The Government Presented False Testimony at Trial

At trial, on November 9, 2021, the Government elicited the "Gun to Your Head" Call testimony from Mr. Klasky in a manner to avoid the date and time of the purported Call. Even in response to Mr. Omidi's counsel's objection under Rule 403, the Government did not disclose the evolution of Mr. Klasky's "Gun to Your Head" Call story to the Court nor its investigation reports and the January 13, 2017 Kelley Spreadsheet that proved Mr. Klasky's "Gun to Your Head" Call story was false. (Tr. 4979-80.) This failure to disclose distorted the fact-finding process at trial and permitted the Government to introduce false and perjured testimony against the Defendants. *Imbler v Pachtman*, 424 U.S. 409, 431 n.34 (1976) ("A claim of using perjured testimony simply may be reframed and asserted as a claim of suppression of the evidence upon which the knowledge of perjury rested."). The Government's claim Mr. Klasky's Trial testimony was "nearly identical" to his grand jury testimony ignores that the Government participated in both instances in presenting perjured testimony, both of which the Government knew was false no later than January 13, 2017, when its own investigation results proved Mr. Klasky's Report of the "Gun to Your Head" Call was false.

The Government believed the "Gun to Your Head" testimony was so important that it elicited it at the very end of its direct examination of Mr. Klasky for added emphasis, and used in its closing and rebuttal. Yet, from the time of Mr. Klasky's August 16, 2017 grand jury testimony through his November 9, 2021 trial testimony, a period of more than four (4) years, the Government produced not one report, investigation, or inquiry into Mr. Klasky's change in testimony or the "Gun to Your Head" Call. This massive black hole requires the Motion for Discovery be granted. *E.g.*, *United States v. HVI Cat Canyon, Inc.*, 2015 WL 12765017, at *6 (C.D. Cal. Apr. 1, 2015) ("History warns us that what is lost in an eighteen minute gap [in the Nixon Watergate tapes] may be more revealing than other evidence that was preserved"). It is inherently unbelievable that such records do not exist pertaining to testimony the Government deemed so critical. Yet, in its Opposition

the Government ignores the total lack of any records for a period of four (4) years from Mr. Klasky's August 16, 2017 change in testimony in the grand jury to his November 9, 2022 trial testimony.  Discovery and an evidentiary hearing are essential to uncover what appears to be the deliberate suppression of material evidence and presentation of false testimony at Trial.

The Government cannot evade full discovery and an evidentiary hearing by its unbelievable claim that all of the in excess of ten (10) members of the prosecution have "no recollection" of any of the events related to the above culpable record of the perjured "Gun to Your Head" story.  If, in fact, this four (4) year black hole does exist in the Government's records, then an inquiry is essential as to why it exists.  The Government's deliberate effort not to talk about and avoid Mr. Klasky's perjury is equally material to the Government's presentation of false testimony.

In *United States v. Price*, 566 F.3d 900 (9th Cir. 2009), the Ninth Circuit, in reversing the conviction for violation of *Brady*, considered and rejected this sort of after-the-fact testimony by a prosecutor.  In *Price*, same as in this case, the prosecutor directed its agent (here Agent Kelley) to investigate the witness but claimed no recollection of the investigation results.  *Id.* at 906.  The *Price* prosecutor testified that "I don't have [a] specific recollection ... [as to] whether I actually saw any [of the materials] myself or whether th[ey] w[ere] communicated to me in my conversations with my agent".  *Id.* (alterations in original).  The Court ruled that, "where the prosecutor states either that he cannot remember or does not know what information his agents relayed to him," the prosecution has not fulfilled its *Brady* obligation.  *Id.* at 910.  The Ninth Circuit held that "[a]llowing such convenient and conclusory testimony to defeat a *Brady* claim would render a defendant's right to obtain *Brady* material meaningless."  *Id.*  The same analysis applies here, the resolution of which requires full discovery and an evidentiary hearing.

The Government does not explain why each and every one of the 10 plus members of the prosecution team who received the January 13, 2017 Kelley Spreadsheet and related reports, failed to place these critical documents in the Government's evidentiary

database. Discovery and an evidentiary hearing are necessary to shed light on this issue.

The Government's investigative results and related January 13, 2017 Kelley Spreadsheet documents, which were not disclosed until after trial on February 16, 2022, proved Mr. Klasky's perjury and the use of the same perjured evidence at trial against Defendants. Accordingly, "we may be dealing with the 'tip of an iceberg' of other evidence that should have been revealed." *United States v. Blanco*, 392 F.3d 382, 393 (9th Cir. 2004) (citation omitted). "[T]he district court should order full disclosure by the government of any and all potential *Brady/Giglio* material, whether or not related to [Mr. Klasky's Gun to Your Head Call]." *Id*. at 394.

Respectfully Submitted,

Dated: March 20, 2022

By: /s/ Elon Berk, Esq.
Attorney for Defendant,
Surgery Center Management, LLC.