E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
DAVID H. CHAO (Cal. Bar No. 273953)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
Major Frauds/General Crimes Sections
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0526
     Facsimile: (213) 894-6269
     E-mail:    Kristen.Williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>SURGERY CENTER MANAGEMENT, LLC,<br><br>          Defendant. | No. CR 17-661(A)-DMG-3<br><br>GOVERNMENT'S OBJECTIONS TO PRESENTENCE REPORT AND SENTENCING POSITION AS TO DEFENDANT SURGERY CENTER MANAGEMENT<br><br>Hearing Date: March 2, 2023<br>Hearing Time: 1:30PM<br>Location:    Courtroom of the<br>             Hon. Dolly M. Gee |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kristen A. Williams, Ali Moghaddas, David H. Chao, and David C. Lachman, hereby files its sentencing position as to defendant SURGERY CENTER MANAGEMENT.

The objections and position are based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 15, 2023        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

_/s/_
KRISTEN A. WILLIAMS
ALI MOGHADDAS
DAVID H. CHAO
DAVID C. LACHMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

SCM was the corporate face of Julian OMIDI's Get Thin empire. Over a year ago, a jury found that SCM, together with OMIDI and others, perpetrated a massive scheme to defraud Tricare and private insurance companies. Through its employees, including Charles Klasky, SCM conducted a large sleep study program that churned out falsified sleep study results (and other false data), which could both be billed to insurance at exorbitant rates and used in an effort to hunt for a co-morbidity that would support the lucrative Lap-Band surgery. SCM's conduct was serious and long-running, leading to millions in fraudulent insurance claims and payments and affecting the lives of thousands of patients who were led to believe they suffered from conditions they did not, in fact, have, and received other medical services based on that fraudulent premise. All told, SCM and its co-schemers bilked insurance companies out of more than $40 million.

For its actions, SCM should be ordered to immediately pay restitution in the amount of $43,798,269.61, to immediately pay a fine in the amount of $142,909,220, and to serve five years' probation to ensure that SCM abides by the Court's orders. Although SCM remains operational, it has refused to accept responsibility and has continued to refuse to cooperate with the Probation Officer. SCM has demonstrated that the recommended sentence is necessary to instill respect for the law, to reflect the seriousness of its crimes, and to afford adequate deterrence to SCM and other companies that would engage in such conduct.

## II.  STATEMENT OF FACTS

Given the Court's familiarity with the facts pertaining to defendant SCM, and because SCM's conduct largely overlaps with that of co-defendant Julian OMIDI ("OMIDI"), the government does not provide a lengthy recitation here and instead incorporates by reference the factual background set forth in its sentencing position for OMIDI.

## III. THE PRESENTENCE REPORT AND GUIDELINE CALCULATIONS

In the PSR, the Probation Officer calculated a total offense level of 39 (PSR ¶ 66 n.2), but did not provide an underlying offense level calculation.  The government's calculation of the offense level under U.S.S.G. § 8C2.3 yields a total offense level of 41,[1] as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2S1.1, 2B1.1(a)(1)] |
| Loss Between $250,000,000 And $550,000,000: | +28 | [2B1.1(b)(1)(O)] |
| More than 10 Victims: | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)] |
| Federal Health Care Offense Involving Gov't Health Care Program (Tricare) And Loss More than $1,000,000: | +2 | [2B1.1(b)(7)(A), (B)(i)] |
| Money Laundering | +2 | [2S1.1(b)(2)(B)] |
| Total Offense Level: | 41 | |

Because SCM is not alleged to be a criminal purpose organization under U.S.S.G. § 8C1.1, the applicable fine is determined pursuant to

---

[1] Whether the offense level is 39 or 41 does not affect the fine calculation because the result is the same for any offense level above 38.  U.S.S.G. § 8C2.4.

U.S.S.G. §§ 8C2.1-10.  The government's calculation of the base fine and guideline fine range is as follows:

| | | |
|---|---|---|
| Base Fine for Offense Level 38 or More: | $72,500,000 | [U.S.S.G. § 8C2.4(e)] |
| Culpability Score: | 10 | [U.S.S.G. 8C2.5(a), (b)(4), (e)] |
| Minimum/Maximum Multiplier: | 2/4 | [U.S.S.G. § 8C2.6] |
| Guideline Fine Range: | $145-$290 million | [U.S.S.G. § 8C2.7] |

However, under 18 U.S.C. § 3571(d), SCM's fine is capped at twice the gross gain or loss resulting from the offense.  As discussed above, the actual losses are currently estimated at $71,454,610.  Thus, under USSG § 8C3.1(b), the fine for SCM is limited by statute to a maximum of $142,909,220.

**IV.  THE COURT SHOULD SENTENCE SCM TO PAY RESTITUTION, A FINE, AND PROBATION**

   **A.   The Court Should Order SCM To Pay Restitution**

Under the Sentencing Guidelines, restitution is among the chief goals in sentencing organizational defendants such as SCM.  "[T]he court must, whenever practicable, order the organization to remedy any harm caused by the offense.  The resources expended to remedy the harm should not be viewed as punishment, but rather as a means of making victims whole for the harm caused."  U.S.S.G. Chapter 8, intro. cmt.  Restitution is also mandatory pursuant to the Mandatory Victims Recovery Act ("MVRA"). 18 U.S.C. § 3663A.  This Court need only reasonably estimate a restitution amount, it need not be calculated with precision. United States v. Baker, 584 Fed. Appx. 469, 471 (9th Cir. 2014) ("Speculation and rough justice are not

3

permitted when calculating restitution under the MVRA, but exact precision is not required and district courts have a degree of flexibility in accounting for the victim's complete losses; thus, a reasonable estimate will suffice.") (quotation omitted). Further, the restitution amount need only be supported by a preponderance of the evidence. 18 U.S.C. § 3664(e). In a case involving multiple participants, such as here, the Court may order each defendant liable for the full amount of restitution. 18 U.S.C. § 3664(h).

Here, the actual losses are $43,798,269.61.[2] Accordingly, the government respectfully requests that the Court order SCM to pay restitution in the amount of $43,798,269.61. Moreover, the government requests that the Court order SCM to pay restitution immediately in a single lump-sum payment. U.S.S.G. § 8B1.1(d); 18 U.S.C. § 3664(f)(3)(A). There are no facts in the record to suggest SCM cannot pay restitution immediately. SCM never responded to the Probation Officer's inquiries and did not provide any financial information. (PSR ¶¶ 51, 56.)

**B.   The Court Should Order SCM To Pay A Fine**

But restitution is the just the beginning. Because SCM is an organizational defendant, the Court must impose a monetary sanction -- independent from restitution -- that is sufficient to punish SCM's fraudulent conduct and deter companies from engaging in such conduct in the future. Under the Guidelines, the fine range "should be based on the seriousness of the offense and the culpability of the organization." U.S.S.G. Chapter 8, intro. cmt. "The seriousness of

---

[2] The government incorporates by reference the sentencing position for defendant OMIDI, which contains the further breakdown of the restitution figures by victim.

the offense generally will be reflected by the greatest of the pecuniary gain, the pecuniary loss, or the amount in a guideline offense level fine table.  Culpability generally will be determined by six factors that the sentencing court must consider.  The four factors that increase the ultimate punishment of an organization are: (i) the involvement in or tolerance of criminal activity; (ii) the prior history of the organization; (iii) the violation of an order; and (iv) the obstruction of justice.  The two factors that mitigate the ultimate punishment of an organization are: (i) the existence of an effective compliance and ethics program; and (ii) self-reporting, cooperation, or acceptance of responsibility." Id.

Here, the seriousness of the offense is difficult to overstate. SCM participated in a sophisticated, years-long scheme to defraud health insurance companies, including Tricare, that involved an intended loss of more than $250 million and impacted more than ten victims.  To say nothing of the hundreds of innocent patients who were exploited at best and endangered at worst by SCM's deceptive practices.  These facts, coupled with SCM's conspiracy to launder monetary instruments, result in an appropriately high offense level of 41, placing SCM in the highest possible fine guideline range.

That fine range must also be doubled under U.S.S.G. § 8C2.6 to properly reflect the aggravated nature of SCM's culpability.  As the Court well knows, SCM had more than 50 employees and "an individual within substantial authority personnel participated in the offense," namely OMIDI.  U.S.S.G. 8C2.5(a), (b)(4).  Additionally, SCM willfully aided and abetted the obstruction and attempted obstruction

5

of justice.[3]  U.S.S.G. 8C2.5(e).  There are no factors in mitigation, as SCM has never accepted responsibility for its actions and did not even bother to participate in the Probation Officer's preparation of the PSR.  Accordingly, SCM's Guideline Fine Range is $145 million to $290 million.  The government concurs with the Probation Officer's recommendation that the Court order SCM to pay a fine of $142,909,220, which is already below the low end of the Guideline Fine Range.

The government further concurs with the Probation Officer's assessment that defendant SCM has the present ability to pay a fine.  (PSR ¶¶ 66, 67.)  Finally, because defendant OMIDI is not known to be a 5 percent or greater owner of SCM, there should be no offset for any fines paid by OMIDI pursuant to U.S.S.G. § 8C3.4.

### C.  Probation

Lastly, "probation is an appropriate sentence for an organizational defendant when needed to ensure that another sanction will be fully implemented, or to ensure that steps will be taken within the organization to reduce the likelihood of future criminal conduct."  U.S.S.G. Chapter 8, intro. cmt.  Pursuant to U.S.S.G. § 8D1.1(a)(1)-(2) and U.S.S.G. § 8D1.2(a)(1), a sentence of probation of between one and five years should be imposed to secure payment of restitution and safeguard SCM's ability to make payments on any fine imposed, if not paid in full at sentencing.  The government concurs with the Probation Officer's recommendation that SCM be sentenced to five years' probation, (PSR Letter at 4), and respectfully requests

---

[3] The obstruction conduct is the same as that described in the plea agreement and factual basis of Charles Klasky.  (See Klasky Plea Agmt., Ex. B at viii.)

6

that the conditions set forth at U.S.S.G. § 8D1.4 be imposed as conditions of probation.

## V.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence SCM to the following:

- Immediately pay $43,798,269.61 in restitution;
- Immediately pay a fine in the amount of $142,909,220;
- Five years' probation, with the conditions set forth at U.S.S.G. § 8D1.4 as conditions of probation; and
- Immediately pay mandatory special assessments totaling $12,800 ($400 per count) under 18 U.S.C. § 3013(a)(2)(B).